UNITED STATES of America, Plaintiff-Appellee,

v.

Robert Charles WIND, a/k/a Jack David Cassidy, a/k/a Ron Kozub, a/k/a Dr. Ron Roberts, a/k/a Robert Wyatt, Defendant-Appellant.

No. 75–1923.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 15, 1975.

Decided Dec. 10, 1975.

Dennis M. Furman, Furman & Jones, Rochester, Mich. (Court-appointed CJA), for defendant-appellant.

Ralph B. Guy, Jr., U. S. Atty., Peter M. Rosen, Detroit, Mich., for plaintiff-appellee.

Before WEICK, Circuit Judge, MARKEY,* Chief Judge, United States Court of Customs and Patent Appeals, and LIVELY, Circuit Judge.

WEICK, Circuit Judge.

Wind has appealed from a Memorandum Opinion and Order of the District Court denying his motion to fix bail in the amount of $25,000 and remanding him to the custody of the United States Marshal to await trial on an indictment charging him and others with conspiracy and with the substantive offenses of narcotics violations. Such appeal is authorized by 18 U.S.C. § 3147(b), and *Stack v. Boyle,* 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951).

Shortly after his arrest Wind was taken before a United States Magistrate, who set an interim bond of $1,000,000 pending a hearing at which Wind could be represented by counsel. Subsequently hearings were held, at which the United States Attorney presented evidence to the effect that Wind had stated that he would post a $1,000,000-bond and then would flee, and that no witness would testify against him. Evidence was also presented that potential witnesses refused to testify against Wind from fear of injury by him. The Magistrate then set bail of $1,500,000 cash or surety bond, which he found was necessary to give reasonable assurance of Wind's appearance at trial.

The Magistrate's decision was then reviewed by the District Court. At the bail review hearing the District Court accepted the United States Attorney's offer to present testimony *in camera* regarding the dangerous propensities of Wind. The Court did so in order to protect witnesses from possible retaliation by Wind prior to the trial.

Wind and his attorney were excluded from the *in camera* hearing. The District Court reviewed the evidence taken before the Magistrate and held that the Magistrate's actions were proper, but it also found as a result of the *in camera* testimony that Wind would flee if released, regardless of bail, and would pose a danger to witnesses and to the community. Accordingly, the District Court remanded Wind to custody without bail.

This appeal from the order of the District Court presents to this Court the problem of determining what procedures are necessary to safeguard a defendant's rights in a pretrial bail hearing. Wind has also filed a motion in this Court ask-

---

* Sitting by designation.

ing us to set bond pending his trial in the District Court.

## I

█ Wind first argues that in a noncapital case a defendant has an absolute right to pretrial release upon such conditions as are necessary to reasonably assure his appearance at trial, and that evidence of a defendant's danger to the community and of his dangerous reputation among potential trial witnesses is irrelevant for the purposes of the hearing. He contends that the Magistrate and the District Court erred in hearing evidence of his dangerous propensities, and that the District Court also erred in refusing to set conditions for his release.

The principal authority cited for the proposition that bail cannot be denied on the basis of danger to the public is *United States v. Leathers,* 134 U.S.App.D.C. 38, 412 F.2d 169 (1969). The Court there held that the amount of bail cannot be predicated upon a finding that a defendant poses a danger to the community; the Court held that the risk of danger to the public does not permit bail to be set so high as to ensure pretrial detention. The purpose of setting bail is to permit release, not to prohibit release.

The criteria to be used in setting bail is contained in 18 U.S.C. § 3146, which states that conditions for release are to be set only if a release on personal recognizance will not reasonably assure the appearance of the defendant in court.[1]

Wind further argues that 18 U.S.C. § 3146 contains no provision permitting pretrial detention without bail, and that since § 3148, governing pretrial release in capital cases, permits pretrial detention without bond if the person might flee or might pose a danger to the community, the omission of such provision in § 3146 was intended by Congress to preclude custody without bond in non-capital cases.

The legislative history of the Bail Reform Act of 1966 does not support

Wind's position. House Report 1541, 1966 *U.S.Code Cong. & Admin.News,* pp. 2293, 2296, indicates that Congress intended to avoid the question of pretrial detention by the wording of § 3146, not to resolve it:

> This legislation does *not* deal with the problem of the preventive detention of the accused because of the possibility that his liberty might endanger the public, either because of the possibility of the commission of further acts of violence by the accused during the pre-trial period, or because of the fact that he is at large might result in the intimidation of witnesses or the destruction of evidence. . . . A solution goes beyond the scope of the present proposal and involves many difficult and complex problems which require deep study and analysis. The present problem of reform of existing bail procedures demands an immediate solution. It should not be delayed by consideration of the question of preventive detention. Consequently, this legislation is limited to bail reform only.

Since Congress did not intend to address the problem of pretrial detention without bond in the Bail Reform Act of 1966, the existence of extrastatutory powers to detain persons prior to trial may be considered.

In *United States v. Gilbert,* 138 U.S. App.D.C. 59, 425 F.2d 490, 491–92 (1969), the Court held:

> A trial court has the inherent power to revoke a defendant's bail during the trial if necessary to insure orderly trial processes. *Fernandez v. United States,* 81 S.Ct. 642, 5 L.Ed.2d 683 (1961) (Harlan, Circuit J.); *Carbo v. United States,* 288 F.2d 282, 686 (9th Cir. 1961); *United States v. Bentvena,* 288 F.2d 442, 443 (2nd Cir. 1961). This is so even though it is recognized that a "defendant in a noncapital case has an absolute right to be enlarged on bail prior to conviction." 81 S.Ct. at

---

1. Specific factors to be considered in making this determination are contained in 18 U.S.C. § 3146(b), wherein danger to the public is not listed.

644. The necessities of judicial administration prevail, and the right to bail is not literally absolute.

In *Carbo v. United States,* 82 S.Ct. 662, 7 L.Ed.2d 769 (1962), Circuit Justice Douglas acknowledged that this inherent power may even extend to custody in advance of trial when the court's own processes are jeopardized by threats against a government witness. He took the view that this inherent power should be exercised, however, only in an "extreme or unusual case." 82 S.Ct. at 668.[2]

[2] The companion case to *Carbo* was not found to be an appropriate situation for the denial of release in the exercise of the court's extraordinary inherent power. *Sica v. United States,* 82 S.Ct. 669, 7 L.Ed.2d 778 (1962) (Douglas, Circuit J.).

We are satisfied that courts have the inherent power to confine the defendant in order to protect future witnesses at the pretrial stage as well as during trial. Yet this power should be exercised with great care and only after a hearing which affords the defendant an ample opportunity to refute the charges that if released he might threaten or cause to be threatened a potential witness or otherwise unlawfully interfere with the criminal prosecution.

The Court held that the District Court could fashion an appropriate order after hearing the evidence.[2] Thus while *Leathers* dealt with the amount of bail, *Gilbert* dealt with denial of bail, and is therefore a proper precedent for this case. We prefer to follow *Gilbert* rather than *Leathers.*

We hold that in a pretrial bail hearing on a non-capital offense, a judicial officer may consider evidence that the defendant has threatened witnesses and is a danger to the community in determining whether the defendant should be released pursuant to 18 U.S.C. § 3146.

II

■ Wind claims that the *in camera* proceeding, from which he and his counsel were excluded, deprived him of his right to a hearing on bail and his right to counsel at the hearing.

18 U.S.C. § 3146 does not specify any particular procedure to be followed in determining the amount of bail, except to state that an order for release shall be made "at his [the defendant's] appearance before a judicial officer." However, *Gilbert* is authority for the proposition that the defendant is entitled to a hearing and to be afforded an opportunity to refute the charges that if he were released he might threaten or cause to be threatened potential witnesses, or might unlawfully interfere with a criminal prosecution.

The transcript of the hearings before the Magistrate contains substantial evidence that Wind did possess these dangerous propensities. Wind had the opportunity to testify at these hearings and with his retained counsel to offer proof that the charges were untrue. He did not take the witness stand nor offer such proof.

■ Some of the evidence offered before the Magistrate by the prosecution was hearsay, but evidence at such hearings need not conform to the rules pertaining to the admissibility of evidence in a court of law. 18 U.S.C. § 3146(f).

The Supreme Court in *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), has approved of the use of reports made by probation officers in connection with sentencing; however, this has been *after* conviction, and a prosecutor does not stand in the same relationship to the Court as does its Probation Officer.

As noted above there was substantial evidence presented before the Magistrate of Wind's violent propensities. The Dis-

**2.** This extrastatutory power is an extension of the power of a court to remand to custody a non-capital defendant during a trial to ensure the orderly progress of the trial and to prevent disruptions caused by threats to witnesses, a power which is also extrastatutory, but has been recognized by the Supreme Court of the United States in *Bitter v. United States,* 389 U.S. 15, 16, 88 S.Ct. 6, 19 L.Ed.2d 15 (1967).

trict Judge did not appear, however, to rely entirely on this evidence, but apparently relied also upon the testimony at the *in camera* hearing from which the defendant and his attorney were excluded. The record is silent as to the extent to which the *in camera* testimony contributed to the decision denying bail. In our opinion, reliance on that testimony to any extent was error. No authority was cited to us by the Government which would support resort to the ex parte *in camera* practice in this case, and we have found none. In general, we disapprove of the practice as being inconsistent with the right to a hearing and the opportunity to refute referred to in *Gilbert.*

We decline to fix bail pending trial, as we believe this to be within the province of the District Court initially.

The order of the District Court remanding Wind to custody without bail is vacated, and the cause is remanded to the District Court for a new hearing.