**UNITED STATES of America, Plaintiff,**

v.

**Richard TERRONES, Defendant.**

**Crim. No. 88–1069–K.**

United States District Court,
S.D. California.

May 3, 1989.

Laura J. Birkmeyer, Asst. U.S. Atty., San Diego, Cal., for U.S.

Anthony C. Valladolid, San Diego, Cal., for defendant.

## AMENDED OPINION

KEEP, District Judge.

Defendant Terrones and two codefendants were indicted for knowingly and intentionally importing 737 pounds of cocaine (335 kilograms) into the United States. If convicted, this offense carries a mandatory minimum of ten years incarceration, a maximum penalty of life imprisonment, a mandatory minimum of at least five years of supervised release, and a four million dollar fine. 21 U.S.C.A. § 841(b)(1)(A)(ii)(II) (West Supp.1988). A detention hearing may be held at the government's request in those cases that involve a federal drug offense carrying a penalty of ten years or more or a serious risk of flight. 18 U.S. C.A. § 3142(f) (West 1985 & Supp.1988). The United States requested a detention hearing for defendant Terrones.

On January 3, 1989, the magistrate held a detention hearing to determine whether defendant Terrones should be detained pending trial. After consideration of the evidence presented at the hearing, Judge Gonzalez set a $350,000.00 personal surety bond, secured by real property pledged by defendant Terrones' family members.

On January 5, 1989, the United States moved for reconsideration of the bail order and presented an *in camera* affidavit to the magistrate. On January 6, at the request of the defense, the magistrate interviewed the person(s) referenced in the sealed affidavit. Although neither the defendant nor his counsel were present at the *in camera* interview(s), defense counsel was invited to submit written questions for the magistrate to ask the source(s). Judge Gonzalez held a further bail hearing on January 9, 1989. Basing her ruling in part on the *in camera* evidence, the magistrate denied bail and ordered the defendant de-tained until trial, finding that he was a flight risk and a danger to the community.

The defendant appealed the magistrate's order to the district court, alleging that the review of the *in camera* evidence was improper. This court conducted a *de novo* bail hearing at which the defendant was represented by counsel. The court finds the following facts, plus those appended to this decision under seal, to be pertinent to the issue of pretrial detention.

Narcotics Task Force Agent Terry Lucchesi received information from a confidential source that there was a narcotics ring operating in San Diego County that used pickup trucks with camper shells and hidden compartments. The source advised that the operation was headed by a male Mexican, "Reyes," and that two other persons, Richard Terrones and a Mexican male, "Sixto," were also involved. Agent Lucchesi learned that Richard Terrones lived at 907 East 18th Street in National City, California, and worked at R & S Precision Automotive in National City.

Through surveillance, Agent Lucchesi identified two possible load vehicles: a 1975 yellow and brown Ford pickup truck, license number 1K85031, and a 1979 green and white Ford pickup truck, license number 1S03949. Both vehicles were seen at defendant Terrones' residence and business. Agent Lucchesi placed both license numbers in the Treasury Enforcement Communication System (TECS) computer.

On December 15, 1988, Agent Lucchesi observed defendant Terrones leave work in a black Chevrolet pickup truck, license number 1D20999. The Agent followed the defendant to his house. Defendant Sixto Sanchez arrived shortly thereafter in a 1981 red pickup truck. The defendants left in their respective trucks and, after picking up passengers, headed to the international border. They entered the Republic of Mexico through the Port of Entry at Otay Mesa, California.

Approximately two hours later, defendant Terrones appeared at the San Ysidro Port of Entry driving the 1979 green and white Ford pickup truck. Because the li-

cense number had already been placed in the TECS computer, defendant Terrones was referred to secondary inspection. The examination of the interior of the vehicle revealed approximately 348.7 pounds of cocaine secreted in a false compartment in the front of the camper shell. Defendant Sixto Sanchez presented himself at the same point of entry a few minutes later driving the 1975 yellow and brown pickup truck. Because this license number also was in the TECS computer, he was referred to secondary inspection. In a secret compartment in the front of the camper shell, 388.6 pounds of cocaine were found. The storage compartments in both vehicles were identical in location and size, and the cocaine appeared to be wrapped in identical packaging.

A few minutes after the entry of defendant Sixto Sanchez' vehicle, the black pickup, which Agent Lucchesi had earlier observed defendant Terrones driving, approached the San Ysidro Port of Entry. The vehicle was driven by defendant Reyes Acebes–Barajas. At the time of his arrest, defendant Acebes admitted ownership of the black pickup truck although the pink slip for it was discovered on defendant Terrones at the time of his arrest. Defendant Terrones' business card for R & S Precision Automotive was discovered on defendant Acebes at the time of his arrest.

Narcotics agents went to R & S Precision Automotive and, during a consensual search, discovered work orders for the two pickup trucks that had attempted to come across the border carrying cocaine. Agent Lucchesi conducted an investigation of the ownership of the vehicles. He discovered that the 1979 green and white Ford pickup is registered to a fictitious person. The address listed for this person is defendant Terrones' previous address and the current address of his parents. The 1975 brown and yellow Ford pickup is registered to one Joe Martinez at defendant Terrones' current residence. The Department of Motor Vehicles search for a registered owner named Joe Martinez at that address was negative. Both vehicles were registered on August 12, 1988.

According to Agent Lucchesi, the cocaine recovered from the two vehicles has a wholesale value of $5,025,000.00 if sold at the kilogram level. The street value, if sold in user quantity, has a value of $33,-500,000.00.

Defendant Terrones is an American citizen and lives and works in the United States. He speaks Spanish. The court notes that he was arrested for narcotics in August 1987 and placed in a drug diversion program run by state authorities. The charges were dismissed when he completed the program in May 1988.

Although defendant Terrones' immediate family lives in the San Diego area, his family has ties to Mexico. According to the TECS computer information, vehicles registered to the defendant's parents travelled through the San Ysidro Port of Entry from Mexico fifty-four times during a six month period in 1988. The Terrones family has relatives in Mexico although the defendant indicates that he does not see them frequently. Defendant's father, Salvador Terrones, Sr., was raised in Mexico, speaks very little English, and owns a parcel of real estate in Mexico. Mr. Terrones, Sr. and the defendant's brother, Salvador Terrones, Jr., are willing to post the security interest in three residences for bail. These residences total $318,000.00 in value.

Most of the above evidence was presented at the detention hearing before the magistrate; it was stipulated that the court could consider these facts, along with proffers made during the *de novo* hearing. This court held that if it did not consider the *in camera* material submitted to the magistrate, it would set a $500,000.00 personal surety bond to be secured by the Terrones family members' property. However, the court did proceed to consider the *in camera* evidence. In so doing, it asked the defendant if he wanted the court to personally interview the source(s) to assess credibility. The defendant declined the court's offer.

After consideration of the evidence presented at the bail hearing before this court as well as the material submitted *in camera*, this court finds that the defendant

presents a flight risk by a preponderance of the evidence, and a danger to the community by clear and convincing evidence. The defendant is therefore ordered detained without bail pending trial.

The issue presented by this case is whether it is lawful for the court to consider *in camera* evidence in determining whether to detain the defendant pending trial. The defendant contends such a procedure is unlawful. After careful consideration of the material submitted in court and *in camera,* the court holds that this case presents rare and unusual circumstances that mandate the consideration of the *in camera* evidence. As to the issue of whether the defendant should be detained, this evidence is very material and relevant as well as reliable. The source(s) cannot be disclosed, nor can the information obtained from the source(s) be disclosed except in the most conclusory of terms. There appears to be no other source of the information but for the confidential witness(es). Further, there is a demonstrated risk of serious bodily harm or death to the source(s) if the court orders disclosure; even detention of the defendant will not obviate the need for nondisclosure.

■ In reaching the conclusion that it is lawful to consider *in camera* evidence in this case, the court has analyzed the Bail Reform Act of 1984, case law, and pertinent constitutional principles. Based upon this analysis, this court holds that in rare and unusual cases, *in camera* evidence can be considered in determining whether an individual can be detained without bail pending trial.

## I. *The Bail Reform Act*

The Bail Reform Act of 1984 recognizes the problem of crimes committed by persons released on bail pending trial; in certain situations it authorizes preventive detention pending trial.[1] 18 U.S.C. § 3142. Through the Act, Congress sought to "give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released." S.Rep.No. 225, 98th Cong., 2nd Sess., at 3, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3185. A judicial officer may order the defendant detained without bail if there is a finding that no condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of the community. 18 U.S.C. § 3142(e).

Preventive detention requires that the defendant's liberty interest is subordinated to the protection of society's interests. *United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 2103, 95 L.Ed.2d 697 (1987). Because the defendant's liberty interest is important, Congress authorized preventive detention for a narrow group of particularly dangerous defendants. S.Rep.No. 225, 98th Cong., 2nd Sess., at 6–7, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3188–89. Individuals, such as defendant Terrones, who have been indicted for federal drug offenses carrying a penalty of ten years or more fall within this category. 18 U.S.C. § 3142(f).

■ Under The Bail Reform Act of 1984, after a judicial officer determines that there is probable cause to believe that the defendant has committed one of the enumerated crimes, a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the appearance of the person and the safety of the community. 18 U.S.C. § 3142(e). The Act requires that a detention hearing be held. 18 U.S.C. § 3142(f). The defendant may request counsel to appear on his behalf, and may testify and present witnesses, cross-examine the witnesses appearing at the hearing, and offer evidence by proffer or otherwise. *Id.* The rules of evidence do not apply at such proceedings; reliable hearsay and proffers are accept-

---

1. Prior to the passage of the Bail Reform Act of 1984, there was a debate as to whether preventive detention was allowed. Some commentators argued that such detention violated the eighth amendment's proscription against excessive bail. *See* W. LaFave, 2 Criminal Procedure § 12.3 (1984). The Supreme Court in *United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 2104–05, 95 L.Ed.2d 697 (1987) upheld preventive detention, effectively extinguishing this argument.

able. *See United States v. Delker*, 757 F.2d 1390 (3rd Cir.1985). The judicial officer is authorized to reconcile the demand for speed in these proceedings and the reliability of the evidence by selectively insisting on the production of evidentiary sources where there is a question as to its accuracy. Such hearings, however, are not to be transformed into a full-fledged trial or a defendant's discovery expedition. *United States v. Acevedo–Ramos*, 755 F.2d 203, 207–08 (1st Cir.1985).

Although defendant Terrones objects to the consideration of *in camera* evidence in determining whether he should be detained, this court finds nothing in the Bail Reform Act precludes it. By considering *in camera* evidence, a judicial officer is better able to assess whether a defendant is a flight risk or a danger to the community. Thus, such consideration furthers the legislative intent and the goals of the Bail Reform Act. Although Congress did not expressly address the receipt of *in camera* evidence, it did not specifically preclude courts from considering it.

Defendant argues that consideration of *in camera* evidence violates his right to cross-examine witnesses testifying *in camera*. The language of the Bail Reform Act does not specifically require that all witnesses be cross-examined; it simply provides that a defendant may cross-examine those witnesses *"who appear at the hearing."* 18 U.S.C. § 3142(f) (emphasis added). The Act further provides that hearsay is acceptable and some witnesses can testify by proffers. These provisions indicate that Congress did not contemplate a right of the defendant to cross-examine all witnesses on whose testimony the court relies in considering detention. Since the Bail Reform Act does not provide for the cross-examination of all witnesses, this right must arise, if at all, from either case law or the Constitution.

Defendant Terrones contends that consideration of *in camera* evidence impairs his ability to rebut the reasons for detention. I agree that it does. The Bail Reform Act does not expressly address the issue of whether the defendant is allowed to rebut *all* evidence considered by the court in determining bail. By this omission, one can say that the Bail Reform Act itself does not specifically prevent consideration of *in camera* evidence. When one considers that the purpose of preventive detention is to protect society and assure that the defendant will not flee, it is consistent with the purpose of preventive detention for the court to consider *in camera* evidence that is material and relevant. In rare and unusual cases, an *in camera* hearing is the only way the court can obtain the information necessary to protect the life of the source(s).

II. *Case law*

There is an absence of case law in the Ninth Circuit addressing the issue of whether *in camera* evidence can be considered in a detention hearing.[2] The First, Third, and Sixth Circuits, however, have discussed this issue.

The Sixth Circuit, in *United States v. Wind*, 527 F.2d 672 (6th Cir.1975), held that *in camera* evidence could not be considered in determining whether to deny the defendant bail. *Wind* was decided before the Bail Reform Act of 1984, when there was significant debate as to whether defendants could ever be held without bail.[3] The defendant in *Wind* argued that consideration of *in camera* evidence deprived him of his right to a hearing on bail and the right to counsel at that hearing. In agreeing with the defendant, the court cited *United States v. Gilbert*, 425 F.2d 490 (D.C.Cir. 1969) as authority for the proposition that the court could not consider the *in camera* evidence. *Wind*, 527 F.2d at 675–76. The issue of *in camera* evidence, however, was

2. The Ninth Circuit, in a case later vacated on mootness grounds, did directly address this issue. *United States v. Cardenas*, 784 F.2d 937, *vacated as moot*, 792 F.2d 906 (9th Cir.1986). The court *upheld* the court's consideration of the government's *in camera* exhibits, citing for

authority the First Circuit case of *United States v. Acevedo–Ramos*, 755 F.2d 203, 206–07 (1st Cir.1985).

3. Note, *supra*, note 1.

not considered by the *Gilbert* court. In *Gilbert*, the court opined that, before detaining a defendant pending trial, a hearing should be held to provide the defendant with the opportunity to refute the charges that if released he might threaten potential witnesses or unlawfully interfere with a criminal prosecution. *Gilbert*, 425 F.2d at 492. This court notes that no authority is cited in *Gilbert* to support this proposition.

Although the issue of reliance on *in camera* evidence in determining bail was not directly before the First Circuit in *United States v. Acevedo–Ramos*, 755 F.2d 203 (1st Cir.1985), the court did sanction the use of such material. It stated that where the government manifests strong reasons for keeping its sources confidential, the judicial officer may, at the defendant's request, test the reliability of evidence *in camera*. *Id.* at 208. The court stated that in a situation warranting such confidentiality, the defendant should be apprised of the gist of the government's evidence at the bail hearing. *Id.* at 209. The court stated that the use of *in camera* evidence was permissible only in a "very unusual case." *Id.*

The Third Circuit also sanctioned the use of *in camera* evidence in very narrow circumstances. *United States v. Accetturo*, 783 F.2d 382 (3rd Cir.1986). The court stated that since Congress has provided defendants the opportunity for a bail detention hearing, there is an inherent right to know what information is being considered and to have the opportunity to challenge the government's information. The court recognized that the presentation of evidence *in camera* compromises this right. Despite this recognition, the court sanctioned the use of *in camera* evidence for bail determination in rare circumstances. *In camera* evidence may be considered "when there [is] a most compelling need and no alternative means of meeting that need." *Accetturo*, 783 F.2d at 391.

In sum, it appears that the circuits that have addressed the use of *in camera* evi-

dence in determining bail have not relied on any concrete authority to support their positions. However, all of the courts do seem to be grappling with the concept of what is fair to the defendant. Although fairness to a defendant is important in determining whether to detain a defendant, this court recognizes, as did the First and Third Circuits, that fairness to society is also important. In balancing these competing interests, there will occasionally be rare and unusual cases where *in camera* evidence must be considered in determining bail. Congress did intend to provide protection for the defendant under the Bail Reform Act of 1984, but it also sought to protect society from a small class of dangerous individuals and to safeguard the integrity of the judicial system by assuring that the defendant would appear to stand trial.

There remains one final step in the analysis. The court must consider whether there is a constitutional prohibition against consideration of *in camera* evidence in determining bail because it denies him procedural due process and an opportunity to cross-examine witnesses.

### III. *Constitutional Bases*

Two constitutional provisions are raised by defendant's argument that consideration of *in camera* evidence in detention hearings is unlawful: [4] the fifth amendment's prohibition against deprivation of life, liberty, or property without due process of law and the sixth amendment's right of the defendant to confront witnesses against him. The court turns first to the due process argument.

▆▆ The legislative decision to detain persons pending trial who are found to be dangerous to the safety of the community does not violate substantive due process. *United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 2101–03, 95 L.Ed.2d 697 (1987); *United States v. Perry*, 788 F.2d 100, 113 (3rd Cir.1986), *cert. denied*, 479 U.S. 864, 107 S.Ct. 218, 93 L.Ed.2d 146 (1986). However, such detention implicates an impor-

---

**4.** The defendant did not clearly identify his constitutional concerns in his brief or argument, though he spoke generally of his right to rebut

evidence against him and a right to cross-examine witnesses.

tant liberty interest and thus must be done in a fair manner. This requirement is mandated by procedural due process. *See Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *United States v. Delker*, 757 F.2d 1390, 1397 (3rd Cir.1985). Defendant Terrones appears to be arguing that consideration of *in camera* evidence violates procedural due process; that is, he is unfairly being deprived of his liberty.

■ Due process is flexible and demands such procedural protections as the particular situation warrants. *Morrissey v. Brewer*, 408 U.S. 471, 482, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). The Supreme Court has held that not every potential loss of liberty requires the full panoply of adversarial protections available at a criminal trial, *i.e.*, representation by counsel, confrontation, and cross-examination. *See id.; see also Gerstein v. Pugh*, 420 U.S. 103, 120, 95 S.Ct. 854, 866, 43 L.Ed.2d 54 (1975).

■ However, the deprivation of liberty must be accompanied by procedural safeguards. The court must consider the significance of the individual's interest, the risk of erroneous determination through the procedures used, and the probable value of additional safeguards. *Mathews v. Eldridge*, 424 U.S. at 336, 96 S.Ct. at 903; *Perry*, 788 F.2d at 113. The interest affected here is the release of an individual on bail pending trial. The court must be mindful, in making a decision to detain an individual, that such detention will restrict the liberty of a presumably innocent person.

In balancing competing interests, courts frequently have to consider *in camera* evidence in criminal proceedings. Perhaps an *in camera* interview of a confidential informant is most analogous to the issue raised herein. The defendant has the right to disclosure of witnesses in order to adequately prepare for trial. This interest must be balanced against the strong public interest in protecting the identity of confidential informants to encourage the free flow of information. *See Rovario v. United States*, 353 U.S. 53, 59–61, 77 S.Ct. 623, 627–28, 1 L.Ed.2d 639 (1957). Hence, not

all witnesses must be disclosed. *See id.* The court also proceeds *in camera* to determine whether to issue search warrants, arrest warrants, and wire-tap authorizations. Each of these *in camera* hearings impacts upon important rights of the defendant (or a person who may never become a defendant) without any input from the defendant or the defense counsel, notably the right to be secure in one's home, the right to be arrested only after a showing of probable cause, and the right of privacy.

■ This court finds that the consideration of *in camera* evidence to determine whether a defendant should be detained pending trial does not violate procedural due process. The court recognizes the important liberty interest of the individual in this situation, but finds that the interests of society, articulated by Congress in the Bail Reform Act of 1984, at times outweighs this interest. Although the consideration of *in camera* evidence does impact on this important liberty interest, such consideration by the court assists in guarding against erroneous detention determinations. Furthermore, by employing procedural safeguards when analyzing such material, detainees will be protected against the violation of due process.

■ The sixth amendment is raised by defendant Terrones' argument that he is entitled to cross-examine and confront witnesses appearing *in camera*. As noted above, the Bail Reform Act does provide for a hearing at which the defendant is able to confront and cross-examine those witnesses appearing at the hearing. It also provides that parties may proceed by proffers and hearsay. *See Delker*, 757 F.2d at 1395–96. The Supreme Court has upheld the constitutionality of these procedures. *Salerno*, 107 S.Ct. at 2103–04. Defendant's assertion that he is unable to cross-examine witnesses appearing *in camera* is not constitutionally compelling since the bail procedures contemplate that a defendant will not have the right to cross-examine all witnesses.

■ The right of a defendant to confront witnesses at pretrial proceedings is not ab-

solute. As noted above, courts often conduct *in camera* situations in criminal proceedings. In these proceedings, the defendant's right of confrontation and cross-examination is subordinated to a competing interest of society. Further, even at pretrial evidentiary hearings, the defendant does not have an absolute right to cross-examine adverse witnesses. *See United States v. Batiste*, 868 F.2d 1089 (9th Cir. 1989).

 In sum, the consideration of *in camera* evidence in determining whether one should be detained pending trial is not prohibited by the Bail Reform Act of 1984, case law, or the fifth and sixth amendments. The most persuasive cases addressing this issue suggests that such evidence may be used only in rare and unusual cases. This court agrees, and, for the following reasons, finds that the case at bar is a rare and unusual one mandating the consideration of *in camera* evidence. First, the *in camera* information is extraordinarily relevant and material on the issues of flight and dangerousness. Second, the court cannot envision any other source of the information but for the confidential affiant(s). Third, the court finds that the affiant(s) suffer(s) from a real threat of serious bodily harm or death if identified. Fourth, the identification of the affiant(s) cannot be disclosed because this threat will not abate even if the defendant is detained. Further, because of the danger to the affiant(s), if identified, the *in camera* evidence in this case cannot be disclosed to the defendant except in the most conclusory of terms.

The court employed the following measures to minimize the possibility of an erroneous detention determination and to provide the defendant with procedural safeguards. The defendant was asked if he desired the *in camera* source(s) personally interviewed; if so, he was invited to submit questions to be asked *in camera*. In this case the magistrate did personally interview the source(s) and invited defendant's counsel to proffer questions of the source(s), which she then asked; the defendant declined this court's offer to do the

same at the *de novo* hearing. The *in camera* interview was transcribed. The reasons why this court found the *in camera* information reliable, very relevant and material; why the court found the source(s) could not be disclosed; why the court found there was no apparent alternative source(s) of the information; and the finding of the court as to why the *in camera* information only could be generally summarized are appended to this decision under seal, for appellate review. Furthermore, the court notes that the Bail Reform Act itself provides for immediate appellate review of the detention decision. 18 U.S.C. A. § 3145(c) (West 1985).

IV. *Analysis of the In Camera Material Submitted in the Instant Case: Sealed Portion of the Order*

Attached hereto is a sealed statement summarizing the *in camera* material and explaining the above findings in more detail. Such material is not to be disclosed to any person, other than a judge reviewing this matter, without court order.

V. *Reasons for Detention*

 Pursuant to Title 18, United States Code, Section 3142, and in accordance with the above factual findings, I find by clear and convincing evidence that there is no condition or combination of conditions set forth in Title 18, United States Code, Section 3142(b) or (c), that the defendant can meet and that would assure the safety of persons in the community. I also find by a preponderance of the evidence that there is no condition or combination of conditions set forth in Title 18, United States Code, Section 3142(b) or (c), that the defendant can meet and that would reasonably assure the appearance of the defendant as required for the following reasons:

1. There is probable cause to believe that defendant Terrones committed a narcotics offense for which the maximum term of imprisonment of 10 years or more is mandated in the Controlled Substances Act set forth in Title 21, United States Code, Section 841, *et seq.* The offense is extremely serious and, if convicted, defendant

faces a mandatory minimum of 10 years in custody. Pursuant to Title 18, United States Code, Section 3142(e), there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required. Although I previously held that defendant had rebutted this presumption, based upon consideration of the *in camera* evidence as well as reconsideration of all the evidence presented to the court, I now find defendant Terrones has not rebutted that presumption.

2. The weight of the evidence against the defendant is extremely strong. It clearly establishes the defendant's knowing and active participation in narcotics trafficking. Defendant personally drove a vehicle containing 348.7 pounds of cocaine into the United States. A second vehicle, containing 388.6 pounds of cocaine, was apprehended at the Port of Entry soon thereafter. Both pickup trucks are registered to fictitious persons at addresses associated with the defendant and/or his family. Work orders for both vehicles were found at defendant's business. Surveillance corroborates defendant was a knowing participant.

3. Although defendant has no criminal convictions, he has a history of drug use. There is evidence of drug use in his family.

4. The magistrate found the defendant's father has a connection to the Republic of Mexico which was not initially disclosed during his testimony on January 3, 1989.

5. Defendant speaks Spanish and has family living in Mexico.

6. Although defendant has substantial ties to the San Diego community, it would be easy for him to flee to Mexico, and there is no extradition treaty with Mexico.

7. Based on the information received *in camera*, I conclude the *in camera* information comes from a reliable and credible source(s). The information presented *in camera* cannot be disclosed either in whole, in part, or in summary (except as already ordered), without disclosing the identity of the source(s) and endangering the source(s).

8. I am no longer confident that the sureties proposed on January 3, 1989, are reliable sureties and could assure the appearance of the defendant and the safety of the community.

### ORDER

IT IS THEREFORE ORDERED that the defendant be committed to the custody of the attorney general or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded reasonable opportunity for private consultation with counsel. While in custody, upon order of a court of the United States or upon request of an attorney for the government, the persons in charge of the corrections facility in which the defendant is confined shall deliver the defendant to a United States Marshal for the purpose of an appearance in connection with the court proceeding or any other appearance stipulated to by defendant and government counsel.

IT IS SO ORDERED.