**UNITED STATES of America, Plaintiff,**

v.

**Edward Maurice BRYANT, Defendant.**

**Case No. RDB–09–0321.**

United States District Court, D. Maryland, Northern Division.

Nov. 6, 2009.

A. David Copperthite, Rod J. Rosenstein, Office of the United States Attorney, Baltimore, MD, for Plaintiff.

James Gerard Pyne, James G. Pyne PA, Towson, MD, for Defendant.

### MEMORANDUM AND ORDER

PAUL W. GRIMM, United States Magistrate Judge.

This Memorandum and Order addresses Defendant Edward Maurice Bryant's Motion to Reconsider Detention Order, Paper No. 73. Defendant moves for reconsideration on the grounds that, after Defendant was detained, co-defendant Marvin Leach provided an affidavit, asserting that Defendant did not participate in the alleged conspiracy. For the reasons stated herein, Defendant's motion is DENIED. This Memorandum and Order disposes of Paper No. 73.

### I. FACTUAL BACKGROUND

On June 3, 2009, Defendant was charged with conspiracy to distribute and to possess with the intent to distribute five kilograms or more of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 846.[1] Paper Nos. 1, 2. On June 5, 2009, following a detention hearing on that date, the undersigned issued an Order of Detention, Paper No. 7, pursuant to 18 U.S.C. § 3142. This Court detained Defendant on the grounds that a serious risk existed that Defendant would not appear for trial if not detained; Defendant posed a risk to the safety of other persons and the community; Defendant's appearance at trial and community safety could not be reasonably assured otherwise; there were facts in the Government's affidavit supporting the complaint; Defendant's prior criminal history included controlled dangerous substance ("CDS") felony convictions; Defendant had multiple Violation of Probation ("VOP") charges; the charges involved substantial amount of CDS and money; and Defendant had multiple aliases.

On August 25, 2009, Defendant filed a Motion to Reconsider Detention Order on the basis of newly-discovered evidence that Defendant "had no participation in any criminal activity alleged in this case." Def.'s Mot. ¶ 3. In support of his motion, Defendant attached an unsworn statement and affidavit of co-defendant Marvin

---

**1.** On July 2, 2009, Defendant was arraigned and pled not guilty.

Leach, in which Mr. Leach averred that Defendant did not participate in the alleged conspiracy. *Id.;* Def.s' Mot., Att. 2, Paper No. 73–3. Defendant also moved for reconsideration because the August 20, 2009 scheduling order pushed the trial date back three months. Def.'s Mot. ¶ 4.

This Court held a bail review hearing on September 16, 2009. Defense counsel argued that according to Mr. Leach's unsworn statement, Defendant was not involved in the alleged conspiracy. However, Defense counsel could not verify that Mr. Leach authored the statement. The Government asserted that it had "definitive evidence" that Mr. Leach's statement contained "fraudulent" facts and was "an attempt to obstruct justice and perpetrate this fraud upon the Court." But, the Government explained that it could not disclose the evidence in open court. The Court asked the Government to submit the evidence *ex parte* and to identify the Court's authority to review such evidence *in camera.*

On September 23, 2009, the Government submitted a letter under seal in support of its opposition to Defendant's motion. In the letter, the Government summarized the evidence it had that Mr. Leach fabricated his statement. On September 29, 2009, the Government submitted a second letter under seal, advising that its evidence that Mr. Leach fabricated the statement was more limited than previously expressed in the September 23, 2009 letter, but maintaining that the statement was fabricated.[2]

The Government also addressed the Court's authority to receive evidence submitted *ex parte,* to review it *in camera,* and to rely on it to deny a defendant's motion for reconsideration of his detention order. On October 6, 2009, the Govern-

ment provided Defense counsel with a redacted copy of its September 23, 2009 letter.

## II. DISCUSSION

I begin with the issue of this Court's authority to review *ex parte* evidence *in camera* and to rely on it to makes its findings pertaining to bail release.

This Court previously considered this issue in *United States v. Stanford,* 551 F.Supp. 209 (D.Md.1982). There, a magistrate judge ordered the defendant detained without bail, relying in part on a sealed affidavit that it reviewed *in camera* and found to be reliable. *Id.* at 210, 211. The defendant appealed, alleging a violation of his due process rights. The District Court concurred with the magistrate judge and denied bail, concluding that the defendant's due process rights were not violated because "all documentary evidence, with the exception of the sealed affidavit, [was] presented in open court," and "any potential, prejudicial effect to the defendant" from the magistrate judge's review of the sealed affidavit "was mitigated by the fact that a summary of the document's contents was provided for the defendant." *Id.* at 211. The Court held that under the circumstances, "where the summary is found to be accurate and complete in terms of the type of details necessary to put the defendant on notice as to the nature of the allegations against him, due process is not violated as long as the defendant has the opportunity to refute the allegations." *Id.*

*United States v. Abuhamra,* 389 F.3d 309 (2d Cir.2004), addressed the post-trial, pre-sentencing detention of the defendant, but nevertheless provides guidance. Indeed, while differentiating Abuhamra's cir-

2. The letters were not docketed; rather, they were submitted only to Chambers. The Court is filing them, UNDER SEAL, as Attachments A and B to this Memorandum and Order. A separate Order directing that this de done will be filed herewith.

cumstances from that of a pre-trial defendant whose "liberty interest can implicate substantive as well as procedural rights, specifically, the proscription against punitive detention before trial," the Second Circuit stated that "even in the pre-trial context, where a defendant's liberty interest is undoubtedly stronger [than in post-trial proceedings following a finding of guilt], the law recognizes that 'the Government's regulatory interest in community safety can, in appropriate circumstances, outweigh [that] liberty interest.'" *Id.* at 320. Further, the court observed that "even in the pre-trial context, few detention hearings involve live testimony or cross examination. Most proceed on proffers." *Id.* at 321 n. 7.

In *Abuhamra,* the district court relied on an agent's affidavit "demonstrating Abuhamra's 'dangerousness,'" submitted *ex parte* and reviewed *in camera,* to deny the defendant's release on bail. *Id.* at 314, 316. Notably, the prosecutor stated that the Government could not "provide 'a summary of the material [in the affidavit] that would give the defendant a gist' of the intended proffer 'without compromising the identification of witnesses or national security.'" *Id.* (quoting transcript of argument on bail motion).

On appeal, the court considered "a defendant's due process right to a fair hearing and the public's interest in open criminal proceedings"; the Government's "competing interests"; and "how these interests can be balanced to comport with due process." *Id.* at 321. The court concluded:

> [A] court should generally not rely on evidence submitted by the government *ex parte* and *in camera* in ruling on a criminal defendant's application for release on bail. An exception to this rule may be made only in rare cases where (1) the government advances an overriding interest that is likely to be preju-

diced by disclosure of the evidence at issue, (2) the order sealing the evidence is no broader than necessary to protect that interest, (3) the district court considers reasonable alternatives to proceeding *ex parte,* (4) the court makes findings adequate to support an *ex parte* proceeding, (5) the government discloses the substance of its *ex parte* submission to the defense, and (6) the district court engages in heightened scrutiny of the reliability of the *ex parte* submissions.

*Id.* at 332; *see Waller v. Georgia,* 467 U.S. 39, 48, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (identifying requisite factors for excluding public from criminal proceedings, adopted in *Abuhamra* as factors (1)-(4)). The court pointed out that often the *ex parte* submission will be corroborative, such that the defendant already has been apprised of its contents. *Id.* at 331. Also, to assess the reliability of a hearsay affidavit, "the court must carefully consider the totality of the circumstances," and with regard to an affidavit from an informant, it may consider, *id.* at 331–32:

> the source's past record for reliability; his relationship, if any, to the defendant; his motive for providing the evidence at issue; the specificity of the information disclosed; the circumstances under which the evidence was procured and disclosed; the confidential source's willingness to testify to this information, at least *ex parte,* in the bail proceeding and, if not, the reasons for that decision; the consequences faced by the confidential source if his disclosures prove false; and the degree to which the disclosures are, or can be, corroborated by other evidence.

In *United States v. Terrones,* 712 F.Supp. 786 (S.D.Cal.1989), in which the District Court for the Southern District of California ordered pretrial detention, the court described the unusual circumstances

that merited its consideration of an *in camera* affidavit and interviews:

> First, the *in camera* information is extraordinarily relevant and material on the issues of flight and dangerousness. Second, the court cannot envision any other source of the information but for the confidential affiant(s). Third, the court finds that the affiant(s) suffer(s) from a real threat of serious bodily harm or death if identified. Fourth, the identification of the affiant(s) cannot be disclosed because this threat will not abate even if the defendant is detained. Further, because of the danger to the affiant(s), if identified, the *in camera* evidence in this case cannot be disclosed to the defendant except in the most conclusory of terms.

*Id.* at 794.

Noting that "the interests of society, articulated by Congress in the Bail Reform Act of 1984, at times outweigh" a defendant's "important liberty interest," the court concluded that "consideration of *in camera* evidence to determine whether a defendant should be detained pending trial does not violate procedural due process." *Id.* at 793. Embracing *in camera* review more broadly than the Second Circuit, *see Abuhamra,* 389 F.3d at 328, the district court reasoned that "nothing in the Bail Reform Act precludes" consideration of *in camera* evidence, and that "such consideration furthers the legislative intent and the goals of the Bail Reform Act" because "a judicial officer is better able to assess whether a defendant is a flight risk or a danger to the community" when the court may consider *in camera* evidence. *Terrones,* 712 F.Supp. at 791. The court also pointed out that, pursuant to the Bail Reform Act, a defendant is only guaranteed the right to "cross-examine those witnesses '*who appear at the hearing,*'" and concluded that the Act's language "indicate[d] that Congress did not contemplate a right of the defendant to cross-examine

all witnesses on whose testimony the court relies in considering detention." *Id.* (emphasis in *Terrones* ).

The Third Circuit in *United States v. Accetturo,* 783 F.2d 382 (3d Cir.1986), acknowledged that *in camera* review of *ex parte* evidence has been sanctioned "on rare occasions ... where there has been a most compelling need and no alternative means of meeting that need." *Id.* at 391. But, the *Accetturo* Court stated that the circumstances before it did not present "such a situation." *Id.* There, an FBI agent testified regarding a "'criminal organization'" in which the defendants participated and which engaged in witness intimidation, and the government produced, as *ex parte* evidence, a recording and transcript of conversations involving one defendant's role in the witness intimidation. *Id.* at 384–85. In concluding that the district court erred when it detained defendants based, in part, on the *ex parte* evidence reviewed *in camera,* a summary of which had been provided to the defendants, *id.* at 385, the Third Circuit reasoned that, except in unusual circumstances, "*in camera* evidence is ... inconsistent with the Bail Reform Act's procedural protections" because the defendants do not have "the opportunity to challenge the reliability of the government's sources as well as provide contrary information," *id.* at 390–91. *Cf. United States v. Wind,* 527 F.2d 672 (6th Cir.1975) (remanding for new hearing where court relied on *in camera* evidentiary hearing).

In contrast, while affirming a magistrate judge's pretrial detention order that was based, in part, on hearsay evidence from unidentified informants regarding the defendant's dangerousness, criminal record, and involvement in the underlying crime, the First Circuit stated in *dicta* that a reliability determination could be made

through *in camera* inspection. *United States v. Acevedo–Ramos,* 755 F.2d 203, 204–06, 208 (1st Cir.1985). Further, the court said that *in camera* examinations of evidence supporting detention "offer[ ] a practical way to reconcile the . . . need for witness protection with a defendant's reasonable interest in securing an independent judicial check on the quality of the evidence the government advances as grounds for his detention." *Id.* at 208–09.

The case before this Court presents the unusual circumstance under which this Court may review *in camera* submissions from the Government and rely on that evidence to deny Defendant's Motion to Reconsider Detention Order. The Government has indicated that revealing the source or circumstances of its evidence could result in witness intimidation and could jeopardize future investigations by the Government. Both reasons constitute "an overriding interest that is likely to be prejudiced by disclosure of the evidence." *See Abuhamra,* 389 F.3d at 332; *see also Terrones,* 712 F.Supp. at 794; *Stanford,* 551 F.Supp. at 212. To be sure, the order sealing the evidence is broad; the evidence is not produced in redacted form. Yet, the substance of the evidence is readily apparent: Mr. Leach averred that Defendant was not a party to the conspiracy, and the sealed evidence indicates that the contrary is true. That is the substance of the Government's charges and therefore well-known to Defendant. *See Abuhamra,* 389 F.3d at 332. Additionally, the Government proffered in open court, in the presence of the Defendant and his attorney, that the facts that it would provide *in camera* would show that the "exoneration" of Defendant was a fabrication. The Defendant was therefore aware of the essence of this evidence, but not the details. Moreover, Defendant had the opportunity to refute this evidence by calling Mr. Leach to testify to the veracity of his unsworn statement, but Defendant did not take advantage of this opportunity. This court has considered the alternatives to proceeding *ex parte, see id.,* but given the nature of the evidence, no alternative presents itself.

Further, the foregoing findings are "adequate to support an *ex parte* proceeding." *See id.* Here, the "proceeding" was limited to the Court's review of the Government's sealed submissions; the Court did not conduct an *ex parte* hearing. *Cf. Wind,* 527 F.2d 672 (court erred in holding *ex parte, in camera* evidentiary hearing). And, as laid out in this Memorandum and Order, this Court has carefully weighed the need for *ex parte* review of the submissions before taking them into consideration in making its ruling. In addition, the *ex parte* submissions meet this Court's heightened scrutiny. *See Abuhamra,* 389 F.3d at 332. Therefore, this Court has the authority to review the *ex parte* evidence *in camera.*

Having reviewed the *ex parte* submissions, this Court finds that the information contained therein substantiates the position that the Government took in the hearing: The affidavit attesting to Defendant's lack of involvement in the conspiracy is a fabrication. In making this finding, this Court also notes that Defense counsel could not authenticate Mr. Leach's affidavit. Thus, there is no newly-discovered evidence before the Court, and therefore the finding that Defendant presents a danger to others and the community is still "supported by [the] clear and convincing evidence" that led this Court to order his pretrial detention. 18 U.S.C. § 3142(f); *see Acevedo–Ramos,* 755 F.2d at 207.

Defendant's Motion is DENIED.