**UNITED STATES of America,**
**Appellee,**

v.

**Mohammed ABUHAMRA,**
**Defendant–Appellant.**

**Docket No. 04–2678–CR.**

United States Court of Appeals,
Second Circuit.

Argued: Sept. 10, 2004.

Decided: Nov. 15, 2004.

**314**

David Gerald Jay, Buffalo, New York, for Defendant–Appellant.

Anthony M. Bruce, Assistant United States Attorney, (Allison P. Gioia, Assistant United States Attorney, on the brief), for Michael A. Battle, United States Attorney, Western District of New York, Buffalo, New York, for Appellee.

Before: CALABRESI, SACK, and RAGGI, Circuit Judges.

RAGGI, Circuit Judge.

Mohammed Abuhamra, who is awaiting sentencing in the Western District of New York (Richard J. Arcara, *Judge* ) on criminal charges of money laundering and dealing in contraband cigarettes, appeals from an April 22, 2004 order of that court denying his application for release on bail pursuant to 18 U.S.C. § 3143(a). The appeal presents a single question: whether a district court may rely on evidence submitted by the government *ex parte* and *in camera* to deny bail. We conclude that such submissions should generally not be entertained because they compromise a defendant's due process right to a fair hearing on his bail application as well as the public's interest in open criminal proceedings. We further conclude that an exception to this rule may be made only in rare cases where (1) the government satisfies the standard for closed criminal proceedings established in *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984); (2) the government discloses to defendant the substance of the government's sealed submission; and (3) the district court engages in heightened scrutiny of the reliability of any *ex parte, in camera* submissions. We remand this case to the district court for reconsideration of Abuhamra's bail application in light of this decision.

### Background

#### I. *The Crime of Conviction*

Mohammed Abuhamra is a native of Yemen who has been a resident of the United States since 1975 and a citizen of this country since 1981. Until his remand on the order that is the subject of this appeal, Abuhamra had resided with his wife, mother, and nine children in Lackawanna, New York. On October 4, 1999, Abuhamra was arrested and charged with participating, together with various co-defendants, in a highly lucrative interstate scheme to traffic in contraband cigarettes. On March 3, 2004, after a jury trial in the Western District of New York, Abuhamra was found guilty on three counts of unlawfully dealing in contraband cigarettes in violation of 18 U.S.C. §§ 2342(a), 2344(a), and 2; and one count of conspiring to launder the proceeds of the aforementioned unlawful activity in violation of 18 U.S.C. § 1956(h). *See United States v. Abuhamra,* 99 CR 131 (W.D.N.Y.1999). Four co-defendants were simultaneously found guilty on the same or related charges.

#### II. *Abuhamra's Original Release on Bail*

In the four-and-a-half year period between his arrest and trial, Abuhamra remained at liberty pursuant to a modest $20,000 secured bond. Within a month of his arrest, the Pretrial Services Department for the Western District of New York concluded that Abuhamra did not require active supervision while on release. Although Abuhamra's bond prohibited him from leaving the Western District of New

York, the district court, on two occasions, granted extraordinary requests for international travel: in 2000, Abuhamra was permitted to make a pilgrimage to Mecca; in October 2003, he was permitted to travel to Yemen for more than three months to visit his dying father. In opposing the latter request, the government advised the district court that the facility where Abuhamra's father was reportedly hospitalized was non-existent, but defense counsel was apparently able to demonstrate that the government was mistaken.

### III. *Abuhamra's Post–Verdict Remand*

After verdict, the government promptly moved to remand Abuhamra and two of his four co-defendants pursuant to 18 U.S.C. § 3143(a)(1), which states in pertinent part:

[T]he judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence, other than a person for whom the applicable guideline ... does not recommend a term of imprisonment, be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c). If the judicial officer makes such a finding, such judicial officer shall order

the release of the person in accordance with section 3242(b) or (c).[1]

In urging Abuhamra's remand, the government relied on the presumptions of flight and danger created by this statute and on the defendant's recent contact in Yemen with a fugitive co-defendant, Ali Abuhamra, Jr. This contact was inferred from photographs purportedly depicting Ali Abuhamra, Jr. that were found by Customs officials in defendant's possession at the time of his January 2004 return to the United States from Yemen [hereafter "Yemen photographs"].

Opposing remand, Abuhamra's counsel asserted that, once again, the government was mistaken as to the facts: the person depicted in the Yemen photographs was Ali Alshuibi, not Ali Abuhamra, Jr. Emphasizing defendant's roots in the United States and his compliance with pre-trial conditions for international travel, counsel urged the court to continue his client's release on bail. Rejecting the argument, the district court orally ordered Abuhamra's remand but invited a written motion for reconsideration.[2]

### IV. *The Motion for Reconsideration of Remand*

The following day, March 4, 2004, Abuhamra filed a written motion for release on bail supported by the sworn affidavit of his 32–year old son, Ahmed Abuhamra, who, *inter alia*, identified the person depicted in

---

**1.** Section 3142(b) provides for pre-trial release on a personal recognizance or unsecured appearance bond. Section 3142(c) provides for pre-trial release on certain conditions.

**2.** At the same time, the district court remanded two co-defendants: (1) Nagib Aziz, who the government accused of engaging in criminal conduct while on pre-trial release, including unlawful possession of an AR–15 semiautomatic weapon; and (2) Aref Ahmed, whom the government accused of financing the trips

of five members of the "Lackawanna Six" to an al-Qaida terrorist camp in Afghanistan. *See generally United States v. Goba*, 240 F.Supp.2d 242 (W.D.N.Y.2003); *see also* Dan Herbeck, *Defendant Accused of Funding Al–Qaida*, Buffalo News, Mar. 4, 2004; Jay Rey, *"Ringleader" of Six Gets 10 Years; Goba's Offenses Called "Serious"*, Buffalo News, Dec. 11, 2003. With the government's consent, the court allowed two remaining co-defendants, Rmzy Abdullah and Asseaz Saleh, to remain free on bail pending sentencing.

the Yemen photographs as Ali Alshuibi. Ahmed Abuhamra noted that he had an uncle named Ali Abuhamra living in Buffalo, New York, but that this uncle had no son named Ali Abuhamra, Jr. Ahmed Abuhamra suggested that the government might be erroneously applying the name "Ali Abuhamra, Jr." to another relative, also named "Mohammed Abuhamra," who, having been arrested on October 4, 1999, but thereafter released, was now in Yemen.

In its opposition memorandum, the government submitted that it was unnecessary for the court to resolve the parties' tangled identification dispute about the person depicted in the Yemen photographs. It conclusorily argued that Abuhamra's submission was simply insufficient to defeat the presumptions of danger and flight established by 18 U.S.C. § 3143(a)(1).

On March 11, 2004, the district court heard oral argument on Abuhamra's bail motion. Defense counsel argued that the identification issue did need to be resolved because, without the inference originally drawn by the government from the photographs—that Abuhamra had consorted with a fugitive while in Yemen—there was no reason to distinguish Abuhamra from the co-defendants who had been allowed to remain free on bail pending sentencing. Counsel reiterated that the person depicted in the Yemen photographs was Ali Alshuibi, and he reported having provided the prosecution with Alshuibi's alien control number so that his identity could be confirmed. Further, counsel indicated that Alshuibi's uncle, Koled Alshuibi, was in court and prepared to testify that his

nephew was the person in the Yemen photographs.

The district court did not attempt to resolve the identity dispute. Neither did it rule as to whether it would otherwise find that Abuhamra had carried his burden for § 3143(a)(1) release. Instead, it inquired whether the government had any *other* reason for opposing Abuhamra's bail application. The government proposed to submit *ex parte* and *in camera* an agent affidavit demonstrating Abuhamra's "dangerousness."[3] Tr. Mar. 11, 2004, 15. Asked by the court to articulate reasons for proceeding in this manner—"Is it to protect the identification of witnesses, is it a threat to a witness with serious bodily harm or death, does it involve national security"—the prosecutor replied, "[a]ll of the above." *Id.* Asked whether the government could, at least, provide "a summary of the material that would give the defendant the gist" of the intended proffer "without compromising the identification of witnesses or national security," the prosecutor replied, "I don't feel that I can." *Id.* at 16. Conducting a preliminarily *ex parte* review of the proffered affidavit, the court ordered Abuhamra remanded subject to further *ex parte* examination of the agent affiant.

That further examination took place on March 23, 2004, and the government has supplied this court (but not Abuhamra) with copies of the sealed twenty-five page transcript of this proceeding and the district court's six-page sealed final order stating its reasons for denying Abuhamra's motion for release on bail. The public order, which Abuhamra did receive, states simply: "For the reasons stated in the [sealed] Decision and Order, the Court

---

**3.** We use the terms *ex parte* and *in camera* to emphasize that the government proposed to withhold its submission from the defendant as well as from the public. For the remainder of this opinion, when we employ the term *"ex parte,"* we intend to convey that neither defendant nor the public had access to the evidence or proceedings under discussion.

finds by clear and convincing evidence that the defendant will pose a danger to [the] community and a risk of flight, if he is released." *United States v. Abuhamra,* 99 CR 131A (W.D.N.Y. Apr. 22, 2004).[4]

At the time this order was entered, Abuhamra's sentencing was scheduled for June 2004. Because the parties disagree as to the proper calculation of the Sentencing Guidelines, the court has adjourned sentence several times apparently awaiting the Supreme Court's decision in pending cases challenging the federal guidelines in light of *Blakely v. Washington,* — U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). *See United States v. Booker,* — U.S. ——, 125 S.Ct. 11, 159 L.Ed.2d 838 (2004); *United United States v. Fanfan,* — U.S. ——, 125 S.Ct. 12, 159 L.Ed.2d 838 (2004).[5]

## Discussion

I. *Jurisdiction and the Standard of Review*

■ Although no judgment of conviction has yet been entered in this case, the district court's order of detention qualifies as a final order that may be appealed directly to this court. *See* 18 U.S.C. § 3145(c); 28 U.S.C. § 1291. *See also United States v. Berrios–Berrios,* 791 F.2d 246, 247 (2d Cir.1986).

■ In reviewing a detention challenge, we examine the district court's fac-

tual determinations for clear error. *See United States v. El–Hage,* 213 F.3d 74, 79 (2d Cir.2000). This clear error standard applies not only to the court's specific predicate factual findings but also to its overall assessment, based on those predicate facts, as to the risk of flight or danger presented by defendant's release. *See United States v. Berrios–Berrios,* 791 F.2d at 250. We defer to the district court on such matters because of its unique insights into the defendant as an individual and into his personal, professional, and financial circumstances. On the other hand, when, as in this case, a defendant submits that he was denied procedural due process in connection with his detention order, we review that legal question *de novo. United States v. El–Hage,* 213 F.3d at 79.

II. *Abuhamra's Due Process Challenge to the District Court's Reliance on the Government's Ex Parte Submission in Denying Bail Pending Sentencing*

■ In challenging the district court's detention order, Abuhamra concedes that, having been found guilty beyond a reasonable doubt at trial of felony crimes, he has no substantive constitutional right to bail pending sentencing. We agree. *See generally Williamson v. United States,* 184 F.2d 280, 281, 95 L.Ed. 1379 (2d Cir.1950) (Jackson, Circuit Justice) ("To remain at large, under bond, after conviction and until the courts complete the process of

---

**4.** As the public statement indicates, the district court attempted to compensate for the fact that evidence was submitted *ex parte* by reversing the burdens of proof, requiring the government to demonstrate by clear and convincing evidence that the defendant, if released, was likely to flee or present a danger to any person or the community, rather than requiring the defendant to demonstrate that, if released, he would not flee or present a danger. *Cf.* Fed.R.Civ.P. 46(c). The government raised no objection to this procedure and does not challenge it on appeal.

**5.** In light of *United States v. Mincey,* 380 F.3d 102, 105–06 (2d Cir.2004), we encourage the district court to proceed with sentencing. We recognize, of course, that Abuhamra may apply for bail release even pending appeal, but he would have to satisfy the heavier burden imposed by 18 U.S.C. § 3143(b). In any event, sentencing would permit Abuhamra to seek appellate review of any alleged errors in his conviction, not simply the district court's denial of bail.

settling substantial questions which underlie the determination of guilt cannot be demanded as a matter of right."). Indeed, Abuhamra acknowledges that present federal law disfavors release on bail under those circumstances. *Compare* Bail Reform Act of 1984, Pub.L. No. 98–473, 203a, 98 Stat.1976, 1981–82 (codified as amended at 18 U.S.C. § 3143(a) (2000)) (presuming court should order detention of defendant pending sentencing unless the court "finds by clear and convincing evidence" that the defendant will be neither a flight risk nor a danger to any person or to the community) *with* Bail Reform Act of 1966, Pub.L. No. 89–465, 3(a), 80 Stat. 214, 215–16 (repealed 1984) (presuming court should grant bail unless it reasonably believed that defendant would flee or pose a danger to society). Nevertheless, he asserts that the district court's reliance on *ex parte* information to deny his bail application violated due process, specifically, his rights to notice of the adverse evidence against him, confrontation, and the effective assistance of counsel. Abuhamra's confrontation and counsel challenges appear to be derivative of, rather than distinct from, his inadequate notice complaint. Thus, we need focus only on his overall claim that due process does not permit a bail application to be denied based on *ex parte* submissions.

A. *The Parties' Competing Post–Verdict Interests in Liberty and Detention Require that Abuhamra Be Afforded Some Opportunity to Demonstrate that He Satisfies the Bail Release Conditions Established in § 3143(a)(1)*

In considering what process, if any, Abuhamra was due in connection with his post-verdict bail application, we apply the analysis outlined in cases such as *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), and *Morrissey v. Brew-er*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The Supreme Court there explained that procedural due process is a flexible standard that can vary in different circumstances depending on " 'the private interest that will be affected by the official action' " as compared to "the Government's asserted interest, 'including the function involved' and the burdens the Government would face in providing greater process." *Hamdi v. Rumsfeld*, —— U.S. ——, ——, 124 S.Ct. 2633, 2646, 159 L.Ed.2d 578 (2004) (quoting *Mathews v. Eldridge*, 424 U.S. at 335, 96 S.Ct. 893). A court must carefully balance these competing concerns, analyzing " 'the risk of an erroneous deprivation' of the private interest if the process were reduced and the 'probable value, if any, of additional or substitute safeguards.' " *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. at 335, 96 S.Ct. 893).

1. *The Defendant's Liberty Interest in Bail Pending Sentencing*

The "private interest" affected by the challenged government action in this case is "the most elemental of liberty interests—the interest in being free from physical detention by one's own government." *Id.; see Jones v. United States*, 463 U.S. 354, 361, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983) (observing that "commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection"). Nevertheless, once a jury found Abuhamra guilty beyond a reasonable doubt of multiple felonies, his reasonable expectation of continued freedom from government detention was significantly reduced from that of the average law-abiding citizen, or that of a pre-trial defendant. In the pre-trial context, a defendant's liberty interest can implicate substantive as well as procedural rights, specifically, the proscription against puni-

tive detention before trial. *See United States v. Salerno*, 481 U.S. 739, 749, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).[6] But once a defendant is afforded the considerable process and constitutional protections of a jury trial and found guilty beyond a reasonable doubt, the substantive interest in avoiding punitive detention essentially disappears, and any continued expectation of liberty pending formal sentencing depends largely on statute.

■ The statute relevant to Abuhamra's case, the Bail Reform Act of 1984, creates no general expectation of post-verdict liberty. To the contrary, it establishes a presumption in favor of detention. *See* 18 U.S.C. § 3143(a); *see also* S.Rep. No. 225, 98th Cong., 1st Sess. 26 (1983), *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3209 ("Once guilt of a crime has been established in a court of law, there is no reason to favor release pending imposition of sentence or appeal."). To secure release on bail after a guilty verdict, a defendant must rebut this presumption with clear and convincing evidence that he is not a risk of flight or a danger to any person or the community. *See id.*; Fed. R.Crim.P. 46(c); *see also* S. Rep. 225, *supra*, at 27, *reprinted in* 1984 U.S.Code Cong. & Admin. News at 3210 ("The Committee intends that in overcoming the presumption in favor of detention [in § 3143(a) ], the burden of proof rests with the defendant."). While this burden is plainly substantial, if a defendant can make the required evidentiary showing,

the statute establishes a right to liberty that is not simply discretionary but mandatory: the judge "*shall* order the release of the person in accordance with section 3142(b) or (c)." *Id.* (emphasis added). In sum, even though a guilty verdict greatly reduces a defendant's expectation in continued liberty, it does not extinguish that interest. The language of § 3143(a) confers a sufficient liberty interest in continued release (on satisfaction of the specified conditions) to warrant some measure of due process protection. *See generally Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (holding that, even in the case of sentenced prisoners, statutes creating rights in good-time credits give rise to an individual interest "sufficiently embraced within Fourteenth Amendment 'liberty'" to require due process protection with respect to any disciplinary denial); *Morrissey v. Brewer*, 408 U.S. at 483, 92 S.Ct. 2593 (noting parolee liberty, though "indeterminate," cannot be terminated without due process protection); *Coralluzzo v. New York State Parole Bd.*, 566 F.2d 375 (2d Cir.1977) (observing that, where issue in dispute is conditional freedom versus incarceration, a liberty interest is at stake warranting due process protection).

### 2. *The Government's Interest in Detaining a Defendant Pending Sentencing*

Against this individual liberty interest, we must, of course, weigh the govern-

---

**6.** This court need not here decide whether the substantive rights at issue in pre-trial detention originate in the Fourth Amendment's prohibition of unreasonable seizures or the Fourteenth Amendment's guarantee of due process. *Compare Albright v. Oliver*, 510 U.S. 266, 273–74, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) *with Bell v. Wolfish*, 441 U.S. 520, 535 & n. 16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). *See generally Torres v. McLaughlin*, 163 F.3d 169, 174 (3d Cir.1998) ("[T]here may be some circumstances during pre-trial

detention that implicate Fourth Amendment rights; however, we refer to the Fourth Amendment as applying to those actions which occur between arrest and pre-trial detention."); *Murphy v. Lynn*, 118 F.3d 938, 946 (2d Cir.1997) (holding that restrictive conditions on pre-trial release "are appropriately viewed as seizures within the meaning of the Fourth Amendment"); *but see Riley v. Dorton*, 115 F.3d 1159, 1163 (4th Cir.1997) (holding that Fourth Amendment does not apply to post-arrest conditions of custody).

ment's strong and obvious countervailing interest in detaining defendants who have been found guilty beyond a reasonable doubt of serious crimes: such detention promotes public safety by removing a presumptively dangerous person from the community; it also encourages general respect for the law by signaling that a guilty person will not be able to avoid or delay imposition and service of the sentence prescribed by law.

As to the former concern, we note that this was a critical motivating factor in the enactment of the Bail Reform Act of 1984. *See* S. Rep. 225, *supra,* at 26, *reprinted in* 1984 U.S.Code Cong. & Admin. News at 3185 ("Many of the changes in the bail reform act ... reflect the committee's determination that federal bail law must address the alarming problem of crimes committed by persons on release and must give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released."). Thus, even in the pre-trial context, where a defendant's liberty interest is undoubtedly stronger, the law recognizes that "the Government's regulatory interest in community safety can, in appropriate circumstances, outweigh [that] liberty interest." *United States v. Salerno,* 481 U.S. at 748, 107 S.Ct. 2095. After verdict, not only is the defendant's liberty expectation reduced, but the government's safety interest is also magnified because, as the Supreme Court noted in *Jones v. United States,* 463 U.S. at 364, 103 S.Ct. 3043, "[t]he fact that a person has been found, beyond a reasonable doubt, to have committed a criminal act certainly indicates dangerousness." This distinction is evidenced in the different presumptions about dangerousness that apply to pre-trial and post-verdict bail determinations. *Compare* 18 U.S.C. § 3142 *with* § 3143.

The interest in ensuring that guilty persons receive and serve their sentences was also a significant impetus to the enactment of § 3143. *See* S. Rep. 225, *supra,* at 26, *reprinted in* 1984 U.S.Code Cong. & Admin. News at 3209 (noting that "release of a criminal defendant into the community after conviction may undermine the deterrent effect of the criminal law"); *see also United States v. Shoffner,* 791 F.2d 586, 589 (7th Cir.1986) ("Congress' desire to reverse what it perceived as a presumption in favor of bail even after conviction under prior bail law demonstrates its recognition that harm results not only when someone is imprisoned erroneously, but also when execution of sentence is delayed because of arguments that in the end prove to be without merit.") (internal citation omitted).

3. *The Defendant's Due Process Right to a Hearing at Which He Can Demonstrate that He Satisfies the Statutory Requirements for Bail Under § 3143(a)*

■ In balancing these competing post-verdict interests to determine the process due to a defendant who seeks bail release pending sentencing, we are mindful that Congress has itself weighted the procedural balance quite decidedly in favor of the government. As already noted, 18 U.S.C. § 3143(a)(1) creates a presumption in favor of detention; it places the burden on the defendant to defeat that presumption; and it requires the defendant to carry that burden by clear and convincing evidence, not by a mere preponderance. Only if a defendant clears these high procedural hurdles is he entitled to release pending sentencing. From this statutory structure, however, we can conclude that the minimal process due a post-verdict defendant who seeks continued release pending sentencing is the opportunity to demonstrate that he satisfies the burden of proof established by § 3143(a)(1). In short, he

is entitled to "some kind of hearing" at which this issue can be fairly resolved. *See* Henry J. Friendly, *Some Kind of Hearing,* 123 U. Pa. L.Rev. 1267, 1296 (1975) (quoting *Wolff v. McDonnell,* 418 U.S. at 539, 94 S.Ct. at 2975).

The government does not argue to the contrary. Indeed, it appears to assume that the same basic procedural safeguards that are statutorily mandated with respect to a pre-trial bail hearing will also apply to post-verdict hearings, although § 3143 is silent on this point. *See* 18 U.S.C. § 3142(f)(2)(B) (stating that, at a pre-trial detention hearing, a defendant has the right to be represented by retained or appointed counsel, the right to testify, the right to call witnesses, and the right to cross-examine witnesses called by the government).[7]

 Instead, the government asserts that these procedural safeguards may be limited in those cases in which compelling reasons preclude the government from disclosing certain evidence to the defense but in which that evidence is relevant to the risk of flight or danger to the community presented by the defendant's release. We think the government's argument sweeps more broadly than due process allows. *Ex parte* submissions may generally *not* be received in opposition to bail release because such submissions compromise both a defendant's due process right to a fair hearing and the public's interest in open criminal proceedings. An exception to this

rule may be made only in cases in which there is a compelling need to maintain the secrecy of certain evidence, no alternative means of meeting that need exist other than *ex parte* submission, and the court carefully limits its sealing order only to materials genuinely implicating the compelling need. *See generally Waller v. Georgia,* 467 U.S. at 48, 104 S.Ct. 2210. Even in such rare circumstances, due process permits a court to consider *ex parte* evidence in opposition to bail release only upon substitute disclosure of the substance of the information to the defense and scrupulous review by the court of the reliability of the sealed materials. To explain our ruling, we address the competing interests (of the defendant, the public, and the government) that are affected by *ex parte* submissions in opposition to bail release, and we consider how these interests can be balanced to comport with due process.

B. *The Competing Interests with Respect to Ex Parte Bail Submissions*

1. *Abuhamra's Due Process Interest in Notice of the Government's Reasons for Opposing His Bail Application and an Opportunity to Respond*

Because it is the defendant who, after verdict, bears the burden of proving that he satisfies the statutory requirements for release on bail, the government need not offer any evidence in opposition. It may simply argue that the defendant has failed

---

**7.** Because the government does not urge otherwise, for purposes of this appeal, we too will assume that the procedures applicable to pre-trial detention hearings also generally obtain post-verdict. We note, however, that even in the pre-trial context, few detention hearings involve live testimony or cross examination. Most proceed on proffers. *See United States v. LaFontaine,* 210 F.3d 125, 131 (2d Cir.2000). This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery." *United States v. Acevedo-*

*Ramos,* 755 F.2d 203, 206 (1st Cir.1985) (Breyer, J.) (quoted approvingly in *LaFontaine,* 210 F.3d at 131). Indeed, § 3142(f)(2)(B) expressly states that the Federal Rules of Evidence do not apply at bail hearings; thus, courts often base detention decisions on hearsay evidence. *Id.* Of course, when considering a post-verdict rather than a pre-trial bail application, the district court has a considerable advantage: it has actually heard the evidence establishing defendant's guilt at trial.

to carry his burden of proof. Had that occurred in this case and had the district court denied Abuhamra bail on that ground, there would be no question that the defendant had received the process he was due under the law. In fact, however, the government did offer evidence in opposition to Abuhamra's bail application, which evidence was received *ex parte* and relied on by the district court as the basis for its ruling denying bail. These circumstances raise due process concerns about whether the defendant received his right to a fair hearing.

In his concurring opinion in *Joint Anti–Fascist Refugee Committee v. McGrath,* Justice Frankfurter famously observed that "the right to be heard" before being forced to suffer a serious loss "is a principle basic to our society," specifically, to its democratic commitment to "fairness," 341 U.S. 123, 168, 170, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring). "Fairness of procedure," which is the essence of due process, *id.* at 161, 71 S.Ct. 624, may not always demand an immediate hearing or one with all the procedural safeguards of a criminal trial, but it does require, at a minimum, that a person "in jeopardy of serious loss" be given "notice of the case against him and opportunity to meet it," *id.* at 171–72, 71 S.Ct. 624. This principle had been earlier recognized by the Supreme Court in *The Japanese Immigrant Case (Yamataya v. Fisher),* 189 U.S. 86, 100–01, 23 S.Ct. 611, 47 L.Ed. 721 (1903): "[N]o person shall be deprived of his liberty without opportunity, at some time, to be heard ... in respect of the matters upon which that liberty depends— not necessarily an opportunity upon a regular, set occasion, and according to the

forms of judicial procedure, but one that will ... be appropriate to the nature of the case." It has since been reiterated many times by both the Supreme Court and this court. *See, e.g., Mathews v. Eldridge,* 424 U.S. at 348–49, 96 S.Ct. 893; *Perry v. McDonald,* 280 F.3d 159, 174 (2d Cir.2001).

 This right to notice and a fair hearing obtains regardless of whether the "case against" a defendant is presented on an issue on which the government bears the burden of proof or in opposition to a position on which the defendant bears the burden. *Cf. Wardius v. Oregon,* 412 U.S. 470, 475, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973) (recognizing government's due process obligation to give notice of evidence in opposition to defendant's announced alibi defense); *Fox v. Mann,* 71 F.3d 66, 70–71 (2d Cir.1995) (same). In either circumstance, the underlying point is the same: "fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights." *Joint Anti–Fascist Refugee Comm. v. McGrath,* 341 U.S. at 171, 71 S.Ct. 624 (Frankfurter, J., concurring); *see also United States ex rel. Knauff v. Shaughnessy,* 338 U.S. 537, 551, 70 S.Ct. 309, 94 L.Ed. 317 (1950) (Jackson, J., dissenting) ("The plea that evidence of guilt must be secret is abhorrent to free men."). That, of course, is the due process concern raised when a court relies on *ex parte* submissions in resolving an issue that is the subject of an adversarial proceeding.[8] Particularly where liberty is at stake, due process demands that the individual and the government each be afforded the opportunity not only to advance their respective positions but to correct or contradict arguments or evidence offered by the other. *See generally Joint Anti–Fascist Ref-*

8. As we discuss *infra* at [30–31], the criminal law does permit *ex parte* submissions in support of arrest and search warrants, but in those circumstances, the secrecy of support-

ing affidavits is maintained only briefly, not indefinitely, as the government proposes in this case.

*ugee Comm. v. McGrath,* 341 U.S. at 171 n. 17, 71 S.Ct. 624 (Frankfurter, J., concurring) (citing *Board of Educ. v. Rice* [1911] A.C. 179, 182 (noting the "duty lying upon every one who decides anything" to "act in good faith and fairly listen to both sides ... always giving a fair opportunity to those who are parties in the controversy for correcting or contradicting any relevant statement prejudicial to their view")). Abuhamra was not afforded that opportunity in this case.

### 2. *The Public's Interest in Open Bail Hearings*

The sealed record in this case means that not only is Abuhamra unaware of the reasons why he is deemed a risk of flight and a danger pending sentencing, but so is the public. This gives rise to a related concern: an *ex parte* proceeding deprives the public of an opportunity to see that justice was done in a matter that sent a person to jail, even if only temporarily.

■ The shared interest of the defendant and the public in open criminal proceedings enjoys constitutional protection, explicitly through the Sixth Amendment's guarantee of public trials, and implicitly through the First Amendment's guarantee of free speech and a free press. *See* U.S. Const., amend. I & VI; *Press–Enterprise Co. v. Superior Court of California ("Press Enterprise II"),* 478 U.S. 1, 7, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986); *Waller v. Georgia,* 467 U.S. at 46, 104 S.Ct. 2210; *Huminski v. Corsones,* 386 F.3d 116, 143, 145 (2d Cir.2004). The American legal tradition has long assumed that "contemporaneous review" of criminal prosecutions "in the forum of public opinion" serves as an important restraint on abuse of government power. *In re Oliver,* 333 U.S. 257, 270, 68 S.Ct. 499, 92 L.Ed. 682 (1948) (holding that *in camera* adjudication of contempt violated due process); *see also*

*Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 557, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) ("To work effectively, it is important that society's criminal process satisfy the appearance of justice, and the appearance of justice can best be provided by allowing people to observe it."(internal quotation marks omitted)); *Gannett v. DePasquale,* 443 U.S. 368, 380, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979) (noting that open proceedings allow the public to see that a defendant "is fairly dealt with and not unjustly condemned").

■ While the Sixth Amendment speaks only of a "public *trial,*" the Supreme Court has construed this right expansively to apply to a range of criminal proceedings, including jury selection, *see Press–Enterprise Co. v. Superior Court of California ("Press Enterprise I"),* 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984); suppression hearings, *see Waller v. Georgia,* 467 U.S. at 46–47, 104 S.Ct. 2210; and even pre-indictment probable cause hearings, *see Press–Enterprise II,* 478 U.S. at 10–13, 106 S.Ct. 2735. Bail hearings fit comfortably within the sphere of adversarial proceedings closely related to trial. Bail litigation arises only after a defendant is formally charged with crimes that the prosecution must be prepared to prove within a specified time at trial. The statutory presumptions and burdens applicable to bail determinations are all defined in terms of a defendant's trial status. Further, bail hearings, like probable cause and suppression hearings, are frequently hotly contested and require a court's careful consideration of a host of facts about the defendant and the crimes charged. Thus, there is an interest in conducting such hearings in open courtrooms so that persons with relevant information can come forward. *See Waller v. Georgia,* 467 U.S. at 46, 104 S.Ct. 2210. While the presentation of evidence at bail hearings may be

more informal than at probable cause and suppression hearings, the matter in dispute is of no less public concern. Bail hearings do not determine simply whether certain evidence may be used against a defendant at trial or whether certain persons will serve as trial jurors; bail hearings determine whether a defendant will be allowed to retain, or forced to surrender, his liberty during the pendency of his criminal case. Although a defendant who has been found guilty at trial retains only a modest conditional expectation of continued liberty pending sentencing, neither the defendant nor the public would be well served by having determinations that so immediately affect even this reduced interest routinely made in closed proceedings or on secret evidence. Thus, while the right to open proceedings is subject to exception, see *Waller v. Georgia*, 467 U.S. at 39, 104 S.Ct. 2210, this factor also merits consideration in reviewing Abuhamra's due process challenge.

3. *The Government's Interest in Proceeding Ex Parte in Opposition to Abuhamra's Motion for Bail Pending Sentencing*

■ In weighing the government's competing interest, we note that, in the district court, three concerns were identified: disclosure to the defense of the evidence proposed for *ex parte* submission would (1) identify confidential witnesses,

(2) threaten the safety of those witnesses, and (3) involve the national security. We observe at the outset that the district court appears not to have relied on a national security rationale in making its sealed ruling. Our own review of the sealed record confirms that no such reliance was warranted: the *ex parte* information may have related to a national security concern, but disclosure of the evidence itself would not have compromised national security.[9] Significantly, none of the proffered evidence is classified "for reasons of national security" pursuant to the Classified Information Procedures Act. 18 U.S.C.A.App. 3 §§ 1–16 (West 2000 & Supp.2003). Had that been the case, we would be obliged to conduct a very different analysis of Abuhamra's due process claim than the one in which we here engage.[10] Instead, we review Abuhamra's due process challenge recognizing that the government's interest in this case is limited to the protection of its confidential witnesses' identities and safety.[11]

■ The government's strong and legitimate interest in protecting confidential sources from premature identification is undeniable. Identification not only compromises the government's ability to use such sources in other investigations, it may expose them to retaliation by those against whom they have cooperated. For these reasons, the law has long recognized an

9. The distinction we draw might best be demonstrated by reference to facts already in the public record in this case. The government publicly opposed the post-verdict bail release of a co-defendant on the ground that he had helped finance travel by other persons to al-Qaida camps in Afghanistan. The information related to a national security concern, but its public disclosure did not compromise that security.

10. In CIPA, Congress itself established a framework for the disclosure (or non-disclosure) of classified information. *See id.* Thus,

we would first have to review the parties' and the district court's compliance with these steps before considering any due process challenge to the statute.

11. Although the government accepted the court's use of the word "witnesses," the sealed record indicates that it would be incorrect to infer therefrom that the government ever contemplated calling any person or persons who supplied the *ex parte* information to testify in any proceeding.

"informant privilege." *See McCray v. Illinois*, 386 U.S. 300, 308, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967) (citing 8 Wigmore, *Evidence* § 2374 (McNaughton rev.1961)).[12] The "informant privilege," however, is not absolute. To ensure a criminal defendant a fair trial, courts may require the government to identify a confidential source who "has taken a material part" in the criminal activity at issue and "been present with the accused at the occurrence of the alleged crime." *Roviaro v. United States*, 353 U.S. 53, 60–61, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); *accord United States v. Saa*, 859 F.2d 1067, 1073 (2d Cir.1988). Outside the trial context, however, specifically in proceedings in which hearsay evidence may be received and in which the defendant's "guilt or innocence" is not the issue to be resolved, the privilege will generally be upheld against due process and confrontation challenges. *See McCray v. Illinois*, 386 U.S. at 313–14, 87 S.Ct. 1056 (upholding informant privilege in context of probable cause hearing). The proceeding here at issue, a post-verdict bail hearing, permits receipt of hearsay evidence and does not determine guilt or innocence (the latter issue having already been decided against the defendant at trial). Thus, the government's invocation of an informant privilege at such a proceeding would

normally be entitled to considerable respect.

We consider the "informant privilege" instructive in this case, notwithstanding the fact that here, the government declines to disclose publicly or to the defense anything about the *ex parte* hearsay evidence it supplied to the district court, asserting that such disclosure would identify the source of that evidence. Having reviewed the sealed record and, with the consent of defense counsel, questioned government counsel *ex parte* at oral argument, we are skeptical of the government's claim that it would be impossible to provide the defense with *any* redacted summary in this case.[13] But even in such circumstances, that would not necessarily outweigh the serious due process concerns presented by a court ruling made entirely on secret evidence.

▄▄▄ The discussion of the informant privilege in *McCray v. Illinois* strongly suggests that where confidential-source evidence is relied on in an adversarial proceeding, the law expects that there will be some opportunity to test the reliability of that evidence "in open court," 386 U.S. at 305–06, 87 S.Ct. 1056 (citing Illinois and California law). Even in the context of prison disciplinary proceedings, in which an inmate has no due process right to counsel or to confrontation, *see*

---

**12.** We use the term "informant privilege" because the relevant case law in this area has developed largely in the context of protecting the identities of informants, not atypically paid informants. Our use of the phrase "informant privilege" is not intended to indicate that the unidentified confidential source in this case is, in fact, a paid informant. In this opinion, we use the words "informant" and "confidential source" interchangeably to refer to the wide range of sources—in and out of law enforcement, human and electronic—whom the government may seek to avoid identifying in particular cases. We recognize that the strength of the government interest in confidentiality may vary with the particular

source at issue and the risks presented by disclosure.

**13.** Because we remand this case for further proceedings, the district court may wish to review this exchange. Accordingly, we direct the government to order a transcript of oral argument, including its *ex parte* exchange with members of this panel, and to provide a copy of the full transcript to the district court. We unseal the record of oral argument for the limited purpose of allowing the government to arrange for preparation of such a transcript. We authorize the district court to maintain or lift the seal on the *ex parte* oral argument in this court as its further review of the case warrants.

*Wolff v. McDonnell*, 418 U.S. at 567–70, 94 S.Ct. 2963, the proceedings are not open to the public, and hearing officers are accorded considerable discretion to review evidence *ex parte, id.* at 565–67, 94 S.Ct. 2963, a prisoner may not be left in total ignorance of facts that may adversely affect his limited liberty interests simply because the government seeks to protect confidential sources. As this court recently observed, in such circumstances, due process requires that a prisoner be given specific factual notice of the charged misbehavior for which he faces discipline, a summary of the substance of any adverse evidence reviewed *ex parte* by the hearing officer, and a statement of reasons for the discipline imposed. *See Sira v. Morton,* 380 F.3d 57, 70, 74–76 (2d Cir.2004) (citing *Wolff v. McDonnell,* 418 U.S. at 563–67, 94 S.Ct. 2963, and *Taylor v. Rodriguez,* 238 F.3d 188, 193 (2d Cir.2001)).

In insisting that due process does not require similar disclosures in this case, the government points us to cases from our sister circuits or from district courts outside this circuit, notably *United States v. Accetturo,* 783 F.2d 382 (3d Cir.1986); *United States v. Acevedo–Ramos,* 755 F.2d 203, 206 (1st Cir.1985) (Breyer, J.); and *United States v. Terrones,* 712 F.Supp. 786 (S.D.Cal.1989), which appear to approve *ex parte* submissions in opposition to bail to protect compelling government interests such as the security of confidential sources.[14]

*Accetturo* and *Acevedo–Ramos* do not, in fact, support the government's position. These cases are distinguishable from the one before us in an important respect: neither involves an *ex parte* submission as the government's sole basis for opposing bail release; rather, these cases consider the use of *ex parte* evidence to corroborate testimony offered in open court. In short, in these cases the defendants plainly had notice of the reasons why the government opposed bail release; what was withheld was certain corroborating evidence supporting those reasons.

Even in this narrower context, however, the Third Circuit in *Accetturo* concluded that an *ex parte* submission should not have been considered. *See* 783 F.2d at 391. The court emphasized that a defendant seeking bail release has "the right to know what information is being submitted to the decisionmaker and the opportunity to challenge the reliability of the government's sources as well as provide contrary information." *Id.* at 390; *see also United States v. Wind,* 527 F.2d 672, 676 (6th Cir.1975) (rejecting reliance on *ex parte* evidence in case arising before enactment of Bail Reform Act of 1984: "In general, we disapprove of the practice as being inconsistent with the right to a hearing and the opportunity to refute."). It noted that an exception to this rule might be recognized only "on rare occasions" where the government demonstrates "a most compelling need and no alternative means of meeting that need." *United States v. Accetturo,* 783 F.2d at 391. The court ruled that the case before it did not fit within this narrow exception. Indeed, the court predicted that few such cases would arise because the government could present its opposition to bail release through hearsay evidence. *Id.*

In *Acevedo–Ramos*, no *ex parte* evidence was, in fact, at issue. Instead, the First Circuit, in *dictum*, raised the possibility that, in limited circumstances, such evi-

---

**14.** The government also cites us to *United States v. Cardenas,* 784 F.2d 937 (9th Cir. 1986), and *United States v. Lewis,* 767 F.Supp. 1008 (E.D.Mo.1991). Because these cases simply rely on *Acevedo–Ramos* and *Accetturo* without expanding on their reasoning, we do not discuss them separately in this opinion.

dence might be considered to corroborate hearsay testimony given in open court to oppose bail release. In *Acevedo–Ramos,* a federal agent had given detailed hearsay testimony—based on undisclosed informant reports and wiretap intercepts—implicating the defendant in eight specific crimes, including murders, armed robberies, and obstruction of justice. *See United States v. Acevedo–Ramos,* 755 F.2d at 205. Rejecting the defendant's hearsay challenge to this evidence, then Circuit Judge Breyer, writing for the panel, noted that a district court's "sensible exercise" of its power "selectively to insist[ ] upon the production of the underlying evidence or evidentiary sources" adequately protected a "defendant's right to cross-examine without unnecessarily transforming the bail hearing into a full-fledged trial or . . . discovery expedition." *Id.* at 207–08. Judge Breyer then added the observation relied on by the government in this case:

> [E]ven in an unusual case, where the government provides strong special reasons for keeping its evidentiary sources confidential (e.g., protecting witness safety), the magistrate or judge, upon defendant's request, can still test the veracity of the government's testimony and the quality of the underlying evidence, by, for example, listening to tapes or reading documents in camera.

*Id.* at 208.[15]

In thus approving *ex parte* review of corroborative evidence in "unusual case[s]," the First Circuit hardly endorsed what the government proposes in this case: providing no notice to a defendant as to the substance of its *ex parte* submission. To the contrary, the First Circuit's qualified approval of *ex parte* submissions appears to be premised on a specific assumption that the defendant will have such notice because the sealed materials will mirror, in whole or in part, the hearsay account being testified to in open court.

> We do not here mean to suggest that in camera presentation of evidence is often desirable or often permissible except in a very unusual case. Rather, we mean that in the very unusual case in which strong special reasons warrant confidentiality—*and where the defendant is apprised of the gist of the evidence through government testimony at the hearing*—the magistrate's independent, thorough in camera, review of the underlying evidence at defendant's request offers the defendant greater protection than no independent check at all.

*Id.* at 209 (emphasis added).

The district court in *United States v. Terrones,* 712 F.Supp. 786, did not condition its approval of *ex parte* submissions on a gist or substance requirement, but its "more liberal view" of *ex parte* evidence in opposition to bail release has not been embraced by other courts. *See United States v. Eischeid,* 315 F.Supp.2d 1033, 1036 n. 1 (D.Ariz.2003) (observing that the "the First and Third Circuit decisions [in *Acevedo–Ramos* and *Accetturo* ] are more consistent with the procedural protections of the [Bail Reform] Act and fundamental notions of due process" than the decision in *Terrones,* the court refused to "mak[e] a detention decision based on evidence that has not been presented to or even summarized for" the defendant); *cf. United States v. Stanford,* 551 F.Supp. 209, 211 (D.Md.1982) (allowing submission of sealed

---

15. We note that the late Judge John R. Bartels appears to have pursued just the course recommended by Judge Breyer in ruling on post-verdict bail applications by defendants Gene Gotti and John Carniglia in *United States v. Ruggiero,* 928 F.2d 1289, 1305–06 (2d Cir.1991) (reviewing evidence *in camera* to eliminate one level of hearsay in the testimony of an agent who testified in open court to defendants' continued drug trafficking and involvement in organized crime).

affidavit pertaining to threats to government witness because defendant was provided with an "accurate and complete" summary of the affidavit, affording him an opportunity to refute its allegations).

We too are disinclined to rely on the reasoning of *Terrones* in resolving this appeal. While we agree with its observation that the Bail Reform Act does not specifically preclude *ex parte* review of evidence, *see United States v. Terrones*, 712 F.Supp. at 791, we conclude, for reasons already discussed, that the right to a fair hearing implicit in § 3143(a)(1) necessarily requires some notice of any reasons advanced by the government in opposition to bail release and a reasonable opportunity to respond, *cf. United States v. Accetturo*, 783 F.2d at 391 (observing that implicit in the Bail Reform Act's pre-trial hearing requirement is the right to notice of any information presented by the government and an opportunity to challenge that submission); *United States v. Wind*, 527 F.2d at 676. To the extent *Terrones* cites the informant privilege in upholding *ex parte* submissions against a due process challenge, *see United States v. Terrones*, 712 F.Supp. at 793, we note that the court does not there distinguish between invocation of the privilege to withhold an informant's name, which raises few, if any, due process concerns at a bail hearing, and its invocation of the privilege to withhold the substance of evidence derived from confidential sources, the focus of our attention in this case. Finally, we do not share *Terrones*'s view that *ex parte* submissions at bail hearings are analogous to *ex parte* submissions in support of arrest and search warrants, or wire-tap authorizations. *See id.* The competing interests at stake in connection with the issuance of warrants and wire-tap authorizations confer no pre-issuance right to an adversarial hearing on any person. Once such orders are executed, however, the *ex parte* submissions are generally unsealed—in the case of arrest and search warrants, usually immediately—and parties whose liberty or property interests are affected are afforded opportunities to challenge the legality of the actions. *See, e.g.*, Fed.R.Crim.P. 5.1(c), 12(b)(4). By contrast, in this case, the parties' dispute is not limited to whether a defendant seeking bail is entitled to a pre- or post-deprivation hearing. The government does not seek simply to delay disclosure of the *ex parte* information to Abuhamra; it argues that, to shield the confidential source of that information, it can avoid any disclosure of its opposition—even of its gist or substance—indefinitely. We reject this position.

C. *The Proper Balance of the Competing Interests Consistent with Due Process*

1. *The General Rule Against Ex Parte Submissions in Opposition to Bail Release*

■ In balancing the competing interests affected by *ex parte* submissions in opposition to bail release, we agree with the First, Third, and Sixth Circuits that such submissions should generally not be received or considered by district courts. *See United States v. Accetturo*, 783 F.2d at 390; *United States v. Acevedo–Ramos*, 755 F.2d at 209; *United States v. Wind*, 527 F.2d at 676. A defendant's due process interest in notice and a fair opportunity to be heard, as well as the public's interest in seeing justice done, particularly with respect to decisions affecting liberty, create a strong presumption against *ex parte* submissions.

2. *The Narrow Exception for Receipt of Ex Parte Evidence*

■ Like our sister circuits, we do not foreclose the possibility that, on rare occasions, extraordinary circumstances might warrant receipt of *ex parte* evidence in opposition to bail release. We

conclude that the circumstances necessary to fit within this narrow exception are (a) satisfaction of the factors outlined by the Supreme Court in *Waller v. Georgia* to exclude the public from certain criminal proceedings, (b) disclosure to the defendant of the gist or substance of the government's *ex parte* submission, and (c) careful scrutiny by the district court of the reliability of the *ex parte* evidence.

### a. *Borrowing the Waller Factors*

As already noted, one consequence of the *ex parte* submissions in this case was to remove a significant portion of Abuhamra's bail hearing from the public courtroom. In *Waller v. Georgia,* the Supreme Court identified four prerequisites to excluding the public from a courtroom during certain criminal proceedings: (1) "the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced," (2) "the closure must be no broader than necessary to protect that interest," (3) "the trial court must consider reasonable alternatives to closing the proceeding," and (4) "it must make findings adequate to support the closure." 467 U.S. at 48, 104 S.Ct. 2210; *see also Press Enterprise I,* 464 U.S. at 510, 104 S.Ct. 819; *Sevencan v. Herbert,* 342 F.3d 69, 74–75 (2d Cir.2003); *Yung v. Walker,* 341 F.3d 104, 110–11 (2d Cir.2003).

The *Waller* test has much to commend it in this case. The government essentially concedes that the first factor must be present to support an *ex parte* submission in opposition to bail release, and the cases on which it relies agree. *See United States v. Accetturo,* 783 F.2d at 392 (stating that review of *ex parte* submission may be sanctioned "only when there has been a most compelling need"); *United States v.*

*Acevedo–Ramos,* 755 F.2d at 209 (noting that *ex parte* submissions are permissible only "in the very unusual case in which strong special reasons warrant confidentiality"); *United States v. Terrones,* 712 F.Supp. at 794 (concluding that the government interest in protecting its informant "from a real threat of serious bodily harm or death if identified," together with other factors, made the case sufficiently "rare and unusual" to permit an *ex parte* submission).

■■■ As for the second and third *Waller* factors, the Third Circuit appears to have incorporated them in its requirement that "no alternative means" be available to meet the compelling government need. *United States v. Accetturo,* 783 F.2d at 391. We similarly conclude that a district court presented with a request to submit evidence *ex parte* should require the government to demonstrate that it proposes to put under seal only those materials (or portions of materials) that would genuinely be compromised by disclosure to the defendant. Every reasonable effort at redaction should be explored. Further, the court should require the government to demonstrate that there are no alternative means by which the government could present in open court, or the defense could be given access to, the information that supports its opposition to bail.[16] Like the Third Circuit, we expect that there will be few cases in which the government can satisfy these factors given its ability to proceed publicly by proffer or through hearsay evidence. *See United States v. Accetturo,* 783 F.2d at 391; *see also United States v. Wind,* 527 F.2d at 675.

■■■ Where, as in this case, a defendant's detention on an *ex parte* submission spans several months, the district court

---

**16.** Where, as in this case, the government seeks to proceed *ex parte* and not simply *in camera,* the court should specifically consider alternative means to give the *defendant* access

to the sealed information even if no satisfactory alternatives for public disclosure can be identified.

should also require the government periodically to demonstrate the continued applicability of the first three *Waller* factors.[17] In some cases, additional time may well permit the government to corroborate confidential source evidence in a form that can be revealed publicly or, at least, to the defendant.

 We do not discuss the fourth *Waller* factor because we are confident in the ability of district court judges generally, and certainly of the district judge in this case, to make the findings necessary to the other factors identified in this decision. We remand this case to the district court to consideration whether the government's application to proceed *ex parte* satisfies these *Waller*-based factors.[18]

 b. *The Defendant's Entitlement to Notice of the Gist or Substance of the Government's Opposition to Bail Release and the Opportunity to Respond*

 In borrowing the *Waller* factors, we recognize that they are intended to identify circumstances where the *public* may be excluded from a criminal proceeding. *Waller* did not contemplate that the *defendant* would also be denied access to the closed proceedings. Because *ex parte* submissions in opposition to bail have just this result, we conclude that the *Waller* factors, by themselves, are inadequate to safeguard a defendant's basic due process rights to notice and a fair hearing. Thus, we conclude that a second prerequisite to the receipt of *ex parte* evidence in opposition to bail is disclosure to the defendant of the gist or substance of the reasons advanced in the government's sealed submission so that the defendant may fairly meet this challenge. *See United States v. Acevedo–Ramos*, 755 F.2d at 209; *United States v. Stanford*, 551 F.Supp. at 211; *cf. United States v. Eischeid*, 315 F.Supp.2d at 1036.[19]

 In the small universe of cases that will satisfy *Waller*, we expect an even smaller sub-set to present any difficulty with respect to disclosure of the substance

---

**17.** District courts routinely follow a similar practice in supervising electronic interceptions, requiring the government to submit reports, often at ten-day intervals, "showing *the need for continued interception.*" 18 U.S.C. § 2518 (emphasis added).

**18.** Depending on the compelling need at issue, a court may also consider whether defense counsel, at least, might be heard in the *in camera* proceeding as to the necessity of proceeding *ex parte*, the scope of the proposed sealing order, and the availability of reasonable alternatives to sealing. *See generally Morgan v. Bennett*, 204 F.3d 360, 368 (2d Cir.2000) (holding that valid concerns for the safety of witnesses and the integrity of the judicial process "may justify a limited restriction on a defendant's access to information known to his attorney"); *United States v. Padilla*, 203 F.3d 156, 159–61 (2d Cir.2000) (rejecting challenge to district court meeting with prosecutor and defense counsel out of the presence of defendants to discuss implications of a related criminal investigation, and

thereafter forbidding defense counsel from disclosing the facts discussed with their clients). We emphasize that in neither of these cases was it likely that the "gag order" would impair counsel's preparation of his client's defense. *See also United States v. Klimavicius–Viloria*, 144 F.3d 1249, 1261–62 (9th Cir.1998) (ruling that Section 6 hearing under the Classified Information Procedures Act conducted with defense counsel but not defendant present was permissible because matter addressed involved question of law); *United States v. Singh*, 922 F.2d 1169, 1172–73 (5th Cir.1991) (holding that defendant's (but not defense counsel's) exclusion from *in camera* hearing to determine whether informant identity had to be disclosed did not violate Confrontation Clause because hearing addressed only the legal question of the materiality of the informant's testimony).

**19.** In *United States v. Accetturo*, 783 F.2d at 386, defendants were also provided with redacted versions or summaries of the govern-

of the government's opposition. Where, as in *United States v. Ruggiero,* 928 F.2d 1289, 1305–06 (2d Cir.1991), or as hypothesized in *United States v. Acevedo–Ramos,* 755 F.2d at 208, *ex parte* submissions are offered simply to corroborate hearsay testimony given in open court, a defendant will already know the reasons for the government's opposition to his bail release. In cases such as this one, however, in which the government's opposition to bail is presented entirely *ex parte,* due process does not permit total secrecy. The government must either apprise the defendant of the substance of its sealed submission or forego the court's consideration of the evidence.

We note that the summary disclosure requirement identified in this decision finds a parallel in the Classified Information Procedures Act, which provides that when the government seeks to avoid a court order to disclose classified information, one option available to it is to move to substitute "a summary" of the information at issue. *See* 18 U.S.C.A.App. 3 § 6(c)(1)(B). Similarly, the possibility that without at least summary disclosure the government would have to forego reliance on *ex parte* evidence finds some support in the law's strict prohibition against consideration of *ex parte* information at sentencing. *See United States v. Corace,* 146 F.3d 51, 54 (2d Cir.1998); *United States v. Louis,* 814 F.2d 852, 858 (2d Cir.1987).

Accordingly, on remand, the district court should not again consider the *ex parte* submission unless the government makes the required summary disclosure and the defendant is afforded an opportunity to respond.

### c. *Judicial Scrutiny of the Reliability of Ex Parte Evidence*

▮▮▮▮ If these first two criteria are satisfied, a final requirement obtains before *ex parte* evidence may be relied upon to deny a bail application: careful judicial scrutiny of the reliability of the sealed submission. In addressing the review obligations of prison hearing officers ordering inmate discipline based on *ex parte* evidence, this court recently emphasized that procedural "[f]airness cannot be achieved without some assessment of the reliability of the evidence offered against the accused." *Sira v. Morton,* 380 F.3d at 78. Precisely because *ex parte* submissions are not tested for reliability in the usual adversarial crucible, a judicial officer who receives such evidence "has the singular responsibility for ensuring that he has been provided with all the facts and circumstances necessary to make an informed assessment of reliability." *Id.* at 79. In a case such as this, in which, as defendant notes, the *ex parte* evidence is "a hearsay affidavit based upon information supplied by another person or persons," Appellant's Br. at 10, the court must carefully consider the totality of the circumstances in assessing the reliability of the evidence. For example, where an informant is involved, the court may consider: the source's past record for reliability; his relationship, if any, to the defendant; his motive for providing the evidence at issue; the specificity of the information disclosed; the circumstances under which the evidence was procured and disclosed; the confidential source's willingness to testify to this information, at least *ex parte,* in the bail proceeding and, if not, the reasons for that decision; the consequences faced by the confidential source if his disclosures prove

ment's *ex parte* submissions; nevertheless, the court concluded that the circumstances were not so compelling nor alternatives so unavail-

able as to permit consideration of the *ex parte* evidence.

false; and the degree to which the disclosures are, or can be, corroborated by other evidence. *See Sira v. Morton*, 380 F.3d at 78–79.

While the district court carefully considered many of these factors in making its initial ruling in this case, it may be appropriate to reconsider reliability on remand. We note that the *ex parte* allegations against Abuhamra, to the extent they purportedly evidenced a danger to the community, are of a sort that would not necessarily be eliminated by the defendant's incarceration. For this reason, one might expect some corroborative evidence to have been developed in the five months since the court's detention order. On remand, the district court may certainly seek more information on this point or any other matter pertinent to the reliability of the *ex parte* evidence.[20]

### *Conclusion*

■ To summarize, we conclude that a court should generally not rely on evidence submitted by the government *ex parte* and *in camera* in ruling on a criminal defendant's application for release on bail. An exception to this rule may be made only in rare cases where (1) the government advances an overriding interest that is likely to be prejudiced by disclosure of the evidence at issue, (2) the order sealing the evidence is no broader than necessary to protect that interest, (3) the district court considers reasonable alternatives to proceeding *ex parte*, (4) the court makes findings adequate to support an *ex parte* proceeding, (5) the government discloses the

substance of its *ex parte* submission to the defense, and (6) the district court engages in heightened scrutiny of the reliability of the *ex parte* submissions.

The case is REMANDED to the district court for reconsideration of Abuhamra's bail application in light of the standards of review identified in this decision.

---

**20.** In this case, the district court, on remand, may wish to pursue with the government a point that arose during our brief *ex parte* exchange with the prosecutor at oral argument: the government's apparent failure to use an obvious investigative tool to corroborate the danger concerns raised in its *ex parte* submission.

We recognize, of course, that in some cases where a defendant's words or actions are more indicative of recklessness than a serious intent to do harm, a district court may nevertheless consider such reckless behavior in assessing whether defendant presents a risk of flight.