FILED
United States Court of Appeals
Tenth Circuit

March 24, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

MOSES VALDEZ, a/k/a Moises,
a/k/a Mo, a/k/a Carnal,

      Defendant - Appellant.

No. 17-6024
(D.C. No. 5:15-CR-00258-F-3)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **O'BRIEN**, and **McHUGH**, Circuit Judges.
_____

Moses Valdez appeals from the district court's denial of his motion to revoke

the magistrate judge's order of pre-trial detention. Exercising jurisdiction under

18 U.S.C. § 3145(c) and 28 U.S.C. § 1291, we affirm.

Mr. Valdez is one of three brothers who, along with other persons, have been

indicted with regard to a longstanding, multi-drug distribution ring in Oklahoma

City. He is facing charges of conspiracy to possess with intent to distribute

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

methamphetamine, cocaine, and marijuana and conspiracy to commit money laundering.

The defendants first were indicted in December 2015. That indictment remained sealed, however, and the defendants were not arrested until after a superseding indictment issued in August 2016. After holding a hearing, the magistrate judge ordered Mr. Valdez detained pending trial. Eventually trial was set for October 2017.

In January 2017, Mr. Valdez and three other defendants all filed motions to reopen the detention proceedings and to revoke the magistrate judge's detention orders. The district court granted the motions to reopen and held a two-day hearing. Under 18 U.S.C. § 3142(e)(3), the charges against Mr. Valdez invoke a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." The district court concluded that Mr. Valdez had rebutted the rebuttable presumption. But it denied his motion to revoke because it was persuaded that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* § 3142(e)(1). Mr. Valdez appeals.

Even with the rebuttable presumption, the government retains the burden of proof. *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003). The government must prove flight risk by a preponderance of the evidence and dangerousness by clear and convincing evidence. *Id.* "We apply de novo review to

2

mixed questions of law and fact concerning the detention or release decision, but we accept the district court's findings of historical fact which support that decision unless they are clearly erroneous." *Id.* at 613. "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on review of the entire record, is left with the definite and firm conviction that a mistake has been committed." *United States v. Gilgert*, 314 F.3d 506, 515 (10th Cir. 2002) (brackets and internal quotation marks omitted).

Mr. Valdez argues that the district court clearly erred in finding that he is dangerous and a flight risk. We need not consider dangerousness, however, because the government adequately established that he presents a flight risk.

In denying pre-trial release, the district court found that the Valdez family has "substantial roots" in La Regina, Chihuahua, Mexico, and "the Valdez brothers have access, if need be, to substantial assets from the extended family in La Regina." Aplt. App., Vol. III at 663. It further found that Mr. Valdez's uncle in Mexico wired him $179,969 in July 2016; over the years, Mr. Valdez has traveled to Mexico to visit family; Mr. Valdez owns a ranch in Mexico; and when Mr. Valdez previously considered himself to be under indictment, he moved to Mexico and lived there for two or three years. The district court concluded,

> Mexico, whether it be La Regina or anyplace else, is a very viable option for the Valdez brothers . . . . They do have a very substantial incentive to flee and to live under the radar in Mexico if necessary. They're facing mandatory minimums of ten years up to a maximum of life imprisonment.

3

I am not – I don't consider it to be all that plausible that they would go and live openly in La Regina, although I can't exclude that possibility. I think with an uncle with substantial resources the more likely possibility and I think this is a real possibility is that they would go to Mexico and live under the radar perhaps not in that village but in a situation in which they could benefit from the generosity of their uncle.

*Id.* at 673-74. The court also stated that it had considered conditions "such as a cash bond, property bond, surety bond, home confinement, even with GPS monitoring, and I am simply persuaded by the government that those conditions would not carry the day and would not suffice." *Id.* at 676.

We agree with the district court that the facts regarding the Valdez family's contacts and assets in Mexico and Mr. Valdez's own assets in and history of travel to Mexico establish by a preponderance of the evidence that Mr. Valdez presents a flight risk. On appeal, Mr. Valdez attacks the flight determination in three ways.

First, he argues the district court clearly erred in finding that he owns property in Mexico and that he previously fled to Mexico when he believed he was under indictment because the findings were based on hearsay. But the Bail Reform Act explicitly provides that "[t]he rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [bail] hearing." 18 U.S.C. § 3142(f)(2). Accordingly, numerous courts have held that hearsay is permissible in a detention hearing. *See, e.g., United States v. Abuhamra*, 389 F.3d 309, 321 n.7 (2d Cir. 2004); *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985); *United States v. Acevedo-Ramos*, 755 F.2d 203, 206-07 (1st Cir. 1985); *United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985). And to the extent

that Mr. Valdez challenges the reliability of certain hearsay evidence, his arguments ignore other evidence also supporting the district court's findings.

Second, Mr. Valdez argues that the district court clearly erred in concluding that he could find refuge in Mexico because "the number of Mexican nationals extradited and U.S. Citizens expelled from Mexico increased significantly over the last 10 years.  The impression that Mexico is a safe haven for individuals born and raised in the United States is, therefore, misplaced." Aplt. Br. at 19.  There was testimony at the hearing, however, that the problem is not so much extradition, but in locating a fugitive in Mexico in the first place.  Mr. Valdez fails to rebut this evidence.

Finally, Mr. Valdez argues that the district court clearly erred in concluding that he had access to substantial wealth through relatives in Mexico.  He claims that "the uncle from whom [he] received the wire transfer is not involved in drug trafficking or otherwise involved in the conspiracy." *Id.* at 20.  This contention does nothing to show clear error.  Mr. Valdez does not dispute that funds exist.  The district court's underlying concern was that Mr. Valdez has access to substantial resources to sustain himself in Mexico, and the source of those funds is irrelevant to that concern.

The district court's decision is affirmed.

Entered for the Court
Per Curiam

5