12-4647-cv (L)
Cabral v. Strada

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of March, two thousand thirteen.

PRESENT: GERARD E. LYNCH,
RAYMOND J. LOHIER, JR.,
SUSAN L. CARNEY,
*Circuit Judges.*

_____

ALVARO CABRAL AND JASON CABRAL,

*Petitioners - Appellants,*

v.                                                                  No. 12-4647-cv
                                                                         12-4690-cv

FRANK STRADA, WARDEN METROPOLITAN
DETENTION CENTER, BROOKLYN, NEW YORK,

*Respondent - Appellee.*

_____

FOR APPELLANT          RICHARD WARE LEVITT, Levitt & Kaizer, New York,
ALVARO CABRAL:         N.Y.

FOR APPELLANT          EDWARD V. SAPONE, New York, N.Y.
JASON CABRAL:

FOR APPELLEE:          CHRISTOPHER C. CAFFARONE, Assistant United States
                       Attorney (Jo Ann M. Navickas, Assistant United States
                       Attorney, *on the brief*), *for* Loretta E. Lynch, United States
                       Attorney for the Eastern District of New York, Brooklyn,
                       N.Y.

Appeal from the United States District Court for the Eastern District of New York (Joanna Seybert, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the November 15, 2012 judgment of the district court is AFFIRMED.

Petitioners-appellants Alvaro Cabral and Jason Cabral appeal from the judgment of the district court entered November 15, 2012, denying their petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] The Cabrals argue that the district court should have granted their habeas petition seeking removal from the segregated housing unit ("SHU") of the Metropolitan Detention Center ("MDC"). They also argue that the district court violated their due process rights in excluding the Cabrals and their counsel from its August 23, 2012 hearing examining the reliability of the MDC's security information. We presume the parties' familiarity with the facts and procedural history of this case, as well as with the issues on appeal.

Since June 22, 2012, the Cabrals have been housed together in a single ten foot by twelve foot cell in the SHU at the MDC. They are confined to this shared cell for twenty-three hours a day during the week and twenty-four hours a day during weekends. On August 8, 2012, they filed the instant habeas petition asking for release from the SHU and transfer to the MDC's general population, alleging that the restrictions placed upon them in the SHU violate their substantive due process rights.

---

[1] The district court adhered to its decision in an oral ruling on February 27, 2013, after additional presentations by the parties. The parties have moved to supplement the record on this appeal to permit this Court to consider additional information presented at that time, and we hereby grant their motions.

"In a due process challenge to pretrial detention, we review the district court's findings of historical fact for clear error and its ultimate resolution of the constitutional due process issue de novo." United States v. Briggs, 697 F.3d 98, 101 (2d Cir. 2012) (internal quotation marks and alteration omitted). To evaluate "the constitutionality of conditions or restrictions of pretrial detention," we determine "whether the [restriction] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." Bell v. Wolfish, 441 U.S. 520, 535, 538 (1979). "Absent proof of intent to punish . . . this determination 'generally will turn on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'" Block v. Rutherford, 468 U.S. 576, 584 (1984), quoting Wolfish, 441 U.S. at 538. We "ordinarily defer to [the] expert judgment" of prison officials "in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response" to administrative considerations. Wolfish, 441 U.S. at 540 n.23. "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" Id. at 539.

The Cabrals have not offered any evidence that the MDC officials who decided to place the Cabrals in the SHU acted with punitive intent. Rather, the evidence supports the district court's finding that their placement in the SHU was motivated by safety concerns. Two confidential informants independently reported that the Latin Kings had issued a "green light" on the Cabrals, that is, a directive that the Cabrals were to be physically attacked on

3

sight.[2] According to the MDC, the Latin Kings' "green lights" are honored by members of both the Latin Kings and Bloods gangs, as well as non-affiliated prisoners wishing to curry favor with the Latin Kings. Indeed, when housed at another institution shortly before being transferred to the MDC, Alvaro Cabral was surrounded by several members of the Bloods before corrections officers intervened to prevent an assault. MDC officials presented convincing evidence that this "green light" therefore threatens the safety not only of the Cabrals, but also other inmates and corrections officers who could be harmed during an altercation or while attempting to break up a fight.

The Cabrals argue that their placement in the SHU is an exaggerated response to these safety concerns. We accord prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Id. at 547. MDC officials testified that before placing the Cabrals in the SHU, less restrictive options were considered and rejected. The evidence reflects that there are Latin Kings and Bloods gang members in all of the MDC's 19 general population units housing pre-trial inmates.[3] Given the extent

---

[2] The Cabrals were indicted in connection with the murder of two Latin Kings members.

[3] At the additional proceeding on February 27, it was disclosed that there are one or more additional housing units at the MDC that have been closed for approximately two years due to lack of inmates. It was represented without contradiction that to open one of those units to house the Cabrals would require assignment of a staff of seven corrections officers in three shifts. While it would have been preferable for the government to have disclosed this information to the district court in a more timely fashion, the district court did not treat the failure to do so as evidence of bad faith or pretext on the part of the MDC administrators. Like the district court, we decline to order the government to reopen what is in effect a closed facility in order to house the Cabrals in a unit of their own. It is entirely reasonable for jail

4

of gang membership within the MDC, we will not order the MDC to take the extraordinary measure of creating a "gang-free" unit specifically for appellants.[4] The district court's finding that the Cabrals' placement in the SHU was not punitive, but was instead reasonably related to the MDC's concern for institutional safety, was not clearly erroneous.[5]

The Cabrals argue, however, that their procedural due process rights were violated when both they and their attorneys were excluded from the district court's August 23, 2012 hearing.[6] That ex parte proceeding was convened to permit the district court to verify that the information regarding the threat to the Cabrals was sufficiently reliable to warrant the actions taken by the MDC. We have reviewed the sealed transcript of this ex parte hearing,

---

administrators, in determining where to assign detainees for non-punitive reasons, to consider the expense of potential alternative arrangements.

[4] The district court also noted the very real concern that even if the MDC removed all known gang members from this "gang-free" unit, it might still contain undisclosed gang members, as well as those who would carry out the Latin Kings' "green light" in an attempt to join the Latin Kings.

[5] The Cabrals argue that their co-defendant, Luis Benitez, has been safely housed in the general population, and that therefore they could be safely housed there as well. It appears undisputed, however, that Benitez is housed in a medical unit, which is "technically part of general population," but presents different security considerations. Based on information presented ex parte during the proceedings on February 27, the district court found that "there is sufficient basis to distinguish Mr. Benitez from the Cabral brothers." That finding was not clearly erroneous. On this record, legitimate medical reasons justify a different balance of medical against security considerations in the case of Benitez than in the case of the Cabrals.

[6] The Cabrals do not appear to have objected to the ex parte presentation of additional information regarding Benitez on February 27. To the extent that the same arguments could be made with respect to that proceeding as with respect to the August 23 proceeding, we conclude that, on essentially the same reasoning set forth below, concern for Benitez's privacy justified the limited ex parte discussion on February 27.

as well as the Cabrals' sealed August 21, 2012 letter requesting that certain issues be addressed at the hearing.

Here, as above, we review the district court's findings of fact for clear error and its "ultimate resolution of the constitutional due process issue de novo." Briggs, 697 F.3d at 101 (internal quotation marks omitted). Ex parte hearings may be held where:

> (1) the government advances an overriding interest that is likely to be prejudiced by disclosure of the evidence at issue, (2) the order sealing the evidence is no broader than necessary to protect that interest, (3) the district court considers reasonable alternatives to proceeding ex parte, (4) the court makes findings adequate to support an ex parte proceeding, (5) the government discloses the substance of its ex parte submission to the defense, and (6) the district court engages in heightened scrutiny of the reliability of the ex parte submissions.

United States v. Abuhamra, 389 F.3d 309, 332 (2d Cir. 2004).

Applying this standard, we conclude that the district court acted appropriately. The government advanced its legitimate interest in protecting its ongoing investigations and the safety of its confidential sources. See id. at 324 ("The government's strong and legitimate interest in protecting confidential sources from premature identification is undeniable."). The scope of the hearing was no broader than needed to protect this interest, as it concerned only the reliability of the information that there was a "green light" out on the Cabrals. The government disclosed the substance of the evidence it intended to elicit during the hearing to the Cabrals, including information that two different confidential informants advised law enforcement officials about the "green light." The district court considered reasonable alternatives to proceeding ex parte, including providing the Cabrals with a redacted copy of

6

the hearing, but decided against it because of the "serious risk that ongoing investigations will be jeopardized, and people in confidential positions will be subjected to harm." Finally, after reviewing the sealed transcript of the hearing as well as the other proceedings in the case, we are convinced that the district court carefully considered the reliability of the ex parte information, by, for example, personally evaluating the credibility of the officers who had assessed the reports from the informants. We therefore hold that the Cabrals' due process rights were not violated when they and their attorneys were excluded from the August 23, 2012 ex parte hearing.

Our affirmance of the district court's judgment should not be construed to suggest that the Cabrals may be housed in the SHU under present conditions indefinitely. While we discern no constitutional violation on the record before us, we do not foreclose the possibility that such a violation may develop as the length of the Cabrals' detention in the SHU extends, or that the district court may, at some point in the future, order the Cabrals transferred to a less restrictive setting.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

7